**John SKAWINSKI**

v.

**STATE.**

**86–241–M.P.**

Supreme Court of Rhode Island.

March 16, 1988.

William C. DiMitri, Jacvkony & DiMitri, Providence, for plaintiff.

James E. O'Neil, Atty. Gen., Thomas Dickinson, Asst. Atty. Gen., for defendant.

## OPINION

WEISBERGER, Justice.

This case comes before us on the petition for certiorari of John W. Skawinski (peti-

tioner) to review a decision of the Superior Court denying the petitioner's application for post-conviction relief. For the reasons set forth below, the petition for certiorari is denied and the judgment of the Superior Court is affirmed. The facts are essentially undisputed and are as follows.

On January 26, 1983, petitioner pleaded nolo contendere to eight counts arising out of an incident in which he and two codefendants forcibly entered a dwelling on the evening of January 1, 1982, and robbed and assaulted five persons present in that house. Prior to imposing sentence, the trial justice ascertained that petitioner was a high school graduate, that he understood the nature of the nolo plea he was entering, and that he was aware of the valuable rights that he was sacrificing as part of his plea of nolo. The trial justice thereafter imposed concurrent sentences on all counts, the longest being forty years, with twenty years to serve and twenty years suspended with probation.

On July 5, 1985, petitioner filed an application for postconviction relief in Providence County Superior Court. The petitioner sought to withdraw or vacate his plea and to have his case remanded for trial on the merits. In support of his application, petitioner alleged that he pleaded to the charges pending against him in reliance on statements by his counsel that he would be eligible for parole after serving one-third of the maximum term imposed. Since twenty years was the maximum term imposed, petitioner believed he would become eligible for parole after serving six years and eight months of his sentence. The petitioner further alleged that new parole standards, issued after sentencing in his case, changed his eligibility status and required that he serve two-thirds of his sentence or thirteen years and four months before consideration for parole.

After hearing arguments on petitioner's application, the trial justice rejected the claim for postconviction relief. The trial justice reasoned that the issue of parole eligibility played no role in the decision to impose sentence in this case. The trial justice further noted that the guidelines themselves were merely discretionary in nature and therefore in no way modified petitioner's sentence. The trial justice thereafter denied petitioner's application for postconviction relief. Following expiration of the period for filing a notice of appeal, the instant petition for certiorari was filed.

In support of his petition for certiorari petitioner raises several issues that will be addressed in the order in which they are presented in petitioner's brief.

I

WHETHER THE TRIAL JUSTICE ERRED IN DETERMINING THAT THE REVISED PAROLE GUIDELINES DID NOT VIOLATE THE EX POST FACTO CLAUSE OF ARTICLE I, SECTION 12, OF THE RHODE ISLAND CONSTITUTION AND ARTICLE I, SECTION 10, OF THE UNITED STATES CONSTITUTION

■ Parole in the Rhode Island penal system is governed by G.L. 1956 (1981 Reenactment) chapter 8 of title 13. The Legislature has provided a statutory scheme that creates a parole board and generally empowers the parole board to grant parole to any prisoner within its control upon completion of a specified portion of the sentence imposed. In particular, § 13–8–1 authorizes the creation of a parole board consisting of five members. With regard to parole eligibility, § 13–8–9 provides in part that

"[t]he parole board in the case of any prisoner whose sentence is subject to its control * * * may by an affirmative vote of a majority of the members of the board, issue to such prisoner a permit to be at liberty upon parole, whenever such prisoner has served not less than one-third (⅓) of the term for which he was sentenced."

In those instances in which a prisoner is subject to the imposition of more than one sentence, § 13–8–10 provides in part that

"(a) If such prisoner be confined upon more than one (1) sentence, such permit may be issued whenever he has served a

term equal to one-third (1/3) of the aggregate time which he shall be liable to serve under his several sentences unless he has been sentenced to serve two (2) or more terms concurrently, in which case such permit shall be issued when he has served a term equal to one-third (1/3) of the maximum term he was required to serve."

On January 27, 1983, the Rhode Island State Parole Board adopted a new set of standards for certain crimes, specifying the period required to be served before one becomes eligible for parole. The Legislature vested the parole board with authority to adopt these new guidelines through its enactment of § 13–8–14.1, as amended by P.L. 1982, ch. 375, § 1 which provides as follows:

"At least once each calendar year commencing on January 1, 1983, the parole board shall adopt standards to be utilized by the said board in evaluating applications for parole of persons convicted of a criminal offense and sentenced to the [A]dult [C]orrectional [I]nstitutions. Said standards shall establish, *with[in] the range of parole eligibility set by statute,* the portion of a sentence which should be served upon conviction for each category of criminal offense prior to parole, and shall serve as guidelines for the board in making individual parole determinations. The board shall consider the applicable standard prior to rendering a decision on a parole application, and may make a determination at variance with that standard only upon a finding that such determination is warranted by individualized factors such as the character and criminal record of the applicant, the nature and circumstances of the offense or offenses for which the applicant was sentenced, the conduct of the applicant while incarcerated, and the criteria set forth in § 13–8–14. In each case where the board grants an application prior to the time set by the applicable standard or denies an application on or after the time set by that standard, the board shall set forth in writing the rationale for its determination." (Emphasis added.)

However, the parole board is limited in its grant of authority by § 13–8–14, which specifically provides that parole shall not be granted to any prisoner unless it appears to the board

"(a) That the prisoner has substantially observed the rules of the institution in which confined as evidenced by reports submitted to the parole board by the director of the department of corrections, or his designated representatives in a form to be prescribed by the director;

"(b) That release would not depreciate the seriousness of his offense or promote disrespect for law;

"(c) That there is a reasonable probability that the prisoner, if released, would live and remain at liberty without violating the law; and

"(d) That the prisoner can properly assume a role in the city or town in which he is to reside. In assessing his role in the community the board shall consider,

(1) whether or not the prisoner has employment

(2) the location of his residence and place of employment

(3) the needs of the prisoner for special services, including but not limited to, specialized medical care and rehabilitative services."

The new parole guidelines, as adopted by the parole board, relating to convictions for assault or battery with a dangerous weapon or substance suggest that a person convicted of the same should serve two-thirds of the sentence imposed before being considered for parole. Specifically, the guideline states:

"A person convicted and sentenced to prison on a charge of Assault or Battery with a Dangerous Weapon or Substance, as defined in R.I.G.L. 11–5–2, should serve two-thirds (2/3) of his/her sentence before being considered for parole release."

The petitioner claims that application of the revised guidelines to his case violates the constitutional prohibition against ex

post facto laws.[1] The trial justice rejected this argument, finding that the parole guidelines were merely advisory in nature and in no way increased petitioner's punishment.

Any ex post facto analysis involves consideration of the Supreme Court decision in *Calder v. Bull,* 3 U.S. (3 Dall.) 385, 1 L.Ed. 648 (1798), in which Justice Chase offered the following definition of laws that fit within the scope of the ex post facto prohibition:

"1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender." *Id.* at 390, 1 L.Ed. at 650.

Within this framework, the Supreme Court has consistently held that the ex post facto clause applies only to laws that work substantive, rather than procedural changes. *See, e.g., Dobbert v. Florida,* 432 U.S. 282, 293, 97 S.Ct. 2290, 2298, 53 L.Ed.2d 344, 356 (1977) (no ex post facto violation when statutory change does not alter " 'substantial personal rights' " but merely changes " 'modes of procedure which do not affect matters of substance' "). In *Weaver v. Graham,* 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981), the Court stated that to fall within the ex post facto prohibition, two critical elements must be present, first, the law "must be retrospective, that is, it must apply to events occurring before its enactment" and, second, "it must disadvantage the offender affected by it." *Id.* at 29, 101 S.Ct. at 964, 67 L.Ed.2d at 23.

More recently, in *Miller v. Florida,* —— U.S. ——, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987), the Supreme Court reviewed an ex post facto application of Florida's sentencing-guidelines law. At the time petitioner committed the crime for which he was convicted, Florida's sentencing-guidelines would have resulted in a presumptive sentence of three and one-half to four and one-half years' imprisonment. The guidelines were subsequently revised and, at the time the petitioner was sentenced, called for a presumptive sentence of from five to seven and one-half years. Deviation from the sentence was permissible but only upon a written finding by the sentencing judge, supported by clear and convincing "reasons" that would produce a "firm belief or conviction" that departure from the guideline was warranted. *Id.* at ——, 107 S.Ct. at 2449, 96 L.Ed.2d at 357. The trial court applied the guidelines in effect at the time of sentencing and imposed a seven-year sentence. On review, the Supreme Court upheld the petitioner's ex post facto challenge, and holding that the revised sentencing guidelines were not merely a procedural change in law, pronounced that their application to petitioner, whose crimes occurred before their effective date, violated the ex post facto clause. *Id.* at ——, 107 S.Ct. at 2452, 96 L.Ed.2d at 361–62. The Court further determined that the revised law was enacted by the State Legislature and had the force and effect of law and as such did not merely provide flexible "guideposts" for use in the exercise of discretion. *Id.* at ——, 107 S.Ct. at 2453–54, 96 L.Ed.2d at 363.

The cited cases represent an important distinction from the parole guidelines at issue in the instant case. The guidelines at issue in *Dobbert, Weaver,* and *Miller* all involved statutory enactments that modified the application of laws in effect at the time of commission of the crime. Our consideration of the issue presented in the instant case turns on this distinction between "laws" subject to an ex post facto

---

**1.** This court has previously engaged in a comprehensive discussion of ex post facto history in Justice Kelleher's opinion in *Lerner v. Gill,* 463 A.2d 1352 (R.I.1983). Accordingly we do not find it necessary to reiterate that history at this time.

analysis and "guidelines" immune from such prohibition.

Prior to implementation of the new parole guidelines, the parole statute in effect as of the time of petitioner's sentencing generally provided that a prisoner could become eligible for parole upon completion of one-third of his or her sentence. A review of § 13–8–14.1, the statute empowering the parole board to adopt new release guidelines, fails to reveal any legislative intent that the parole board should have the power to enact provisions that would conflict with any parole-eligibility statutes already in existence. In fact, § 13–8–14.1 specifically mandates that the new standards fall within the range of parole eligibility set by statute. The instant case is readily distinguished from *Miller*, where the Florida Legislature expressly adopted all or part of the sentencing guidelines as recommended by the commission on guidelines. The Florida sentencing law specifically provided that such revisions would become effective " 'only upon the subsequent adoption by the Legislature of legislation implementing the guidelines as then revised.' " — U.S. at ——, 107 S.Ct. at 2448, 96 L.Ed.2d at 357.

██ In the instant case, the parole standards at issue are merely procedural guidelines that are used in the exercise of discretion of the parole board in evaluating a prisoner's petition for parole. It is evident that the Legislature intended the parole board to exercise its broad discretion and to deviate from the guidelines when individual circumstances so warrant. Accordingly, the parole board may, in its discretion, grant parole prior to the time set by the applicable standards or deny an application on or after the time set in the applicable standards. In either case, the board must set forth in writing the rationale for its determination. Unlike the sentencing guidelines involved in *Miller*, no onerous burden of proof is required before

the board may deviate from the norm. However, it is equally evident that the Legislature intended the parole board to exercise that discretion within the boundaries set by statute.

Accordingly, we find that there can be no ex post facto violation since there has been no change in the parole statute between the time of petitioner's sentencing and the present time. Under the parole statute, petitioner is still eligible for parole after serving one-third of his sentence.[2] If at that time, petitioner's application for release is denied parole review, he may then seek judicial review by way of postconviction relief, although we note that at no time does a defendant have an absolute right to receive parole at the time of parole consideration. *Lee v. Kindelan*, 80 R.I. 212, 95 A.2d 51 (1953).

## II

### WHETHER THE NEW PAROLE GUIDELINES OPERATE TO NEGATE THE VOLUNTARINESS OF PETITIONER'S PLEA

██ The petitioner contends that his parole eligibility was a key factor in his decision to enter a plea and that his plea was made in reliance on the parole statute as it existed at the time of sentencing. The petitioner claims that because the new guidelines were issued after sentencing, his plea has been rendered involuntary. The trial justice rejected petitioner's claim, finding instead that parole considerations played no part whatsoever in the court's sentencing functions.

The simple answer is that there is no issue of voluntariness since nothing has changed to affect the validity of the petitioner's plea. In other words, the parole statute has remained the same, and according to the statute, the petitioner is still eligible for parole after serving one-third of his sentence. If at that juncture, the peti-

---

**2.** There may be some question whether petitioner's case falls within the parole scheme contemplated by G.L. 1956 (1981 Reenactment) § 13–8–9, which applies to "any prisoner whose sentence is subject to [the parole board's] control," or whether petitioner's case falls under § 13–8–10, which applies to prisoners who are subject to concurrent or consecutive terms. In either situation it seems that the one-third standard still applies. However, that issue has not been raised and need not be addressed at this point.

tioner is denied parole review, his remedy lies in the form of a petition for postconviction relief.

For the reasons stated, the petition for certiorari is hereby denied and dismissed. The writ heretofore issued is hereby quashed. The papers in the case may be remanded to the Superior Court with our decision endorsed thereon.