[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This matter is before the Court on the petitioner Harold Tillinghast's application or postconviction relief filed pursuant to R.I. Gen. Laws 1956 (1988 Reenactment) 10-9.1-1.
FACTUAL BACKGROUND
On the evening of November 30, 1978, George M. Tillinghast and Harold L. Tillinghast murdered one George Basmajian in an execution style killing. The particulars are related in State v.Tillinghast, 465 A.2d 191 (R.I. 1983). Later that same evening the Tillinghasts were arrested, and subsequently charged by the state with first degree murder, and receiving stolen goods with a value in excess of $500.00. When the killing occurred, a Rhode Island statute then provided that prisoners sentenced to imprisonment for life had to serve not less than 10 years' imprisonment before becoming eligible for parole, see, 1970 R.I. Pub. Laws 1200, § 1, R.I. Gen. Laws § 13-8-13 (1969 Reenactment).[1] On August 10, 1979, having been found guilty on both counts, the Tillinghasts were sentenced to a term of life imprisonment for the first degree murder count and a sentence of 5 years for the receiving stolen goods charge, with the sentences ordered to run concurrently.
Following the Tillinghasts' conviction and sentencing, §13-8-13 was amended effective July 10, 1989, to provide that prisoners sentenced to imprisonment for life for a first or second degree murder committed after July 10, 1989, had to serve not less than 15 years' imprisonment before becoming eligible for parole, see 1989 R.I. Pub. Laws 419, § 1, R.I. Gen. Laws §13-8-9 (1981 Reenactment).[2]
It is clear then, that the amended version of § 13-8-9 does not apply to the Tillinghasts, since the murder they committed occurred before the enactment of the amended version of § 13-8-9.
On January 27, 1983, the Rhode Island State Parole Board adopted a new set of standards for certain crimes, specifying the period required to be served before one becomes eligible for parole. The legislature vested the parole board with authority to adopt these new guidelines through its enactment of § 13-18-14.1, as amended by P.L. 1982, Ch. 375 § 1 which provides as follows:
 At least once each calendar year commencing on January 1, 1983, the parole board shall adopt standards to be utilized by the said board in evaluating applications for parole of persons convicted of a criminal offense and sentenced to the [A]dult [C]orrectional [I]nstitutions. Said standards shall establish, with[in] the range of parole eligibility set by statute, the portion of a sentence which should be served upon conviction for each category of criminal offense prior to parole, and shall serve as guidelines for the board in making individual parole determinations. The board shall consider the applicable standard prior to rendering a decision on a parole application, and may make a determination at variance with that standard only upon a finding that such determination is warranted by individualized factors such as the character and criminal record of the applicant, the nature and circumstances of the offense or offenses for which the applicant was sentenced, the conduct of the applicant while incarcerated, and the criteria set forth in § 13-8-14. In each case where the board grants an application prior to the time set by the applicable standard or denies an application on or after the time set by that standard, the board shall set forth in writing the rationale for its determination." (Emphasis added.)
However, the parole board is limited in its grant of authority by § 13-8-14 which specifically provides that parole shall not be granted to any prisoner unless it shall appear to the board
 (a) That the prisoner has substantially observed the rules of the institution in which confined as evidenced by reports submitted to the parole board by the director of the department of corrections, or his designated representatives in a form to be prescribed by the director;
 (b) That release would not depreciate the seriousness of his offense or promote disrespect for law;
 (c) That there is a reasonable probability that the prisoner, if released, would live and remain at liberty without violating the law; and
 (d) That the prisoner can properly assume a role in the city or town in which he is to reside. In assessing his role in the community the board shall consider,
 (1) whether or not the prisoner has employment
 (2) the location of his residence and place of employment
 (3) the needs of the prisoner for special services, including but not limited to, specialized medical care and rehabilitative services.
The new parole guidelines, as adopted by the parole board, relating to convictions for first degree murder suggest that a person convicted of the same should serve 15 years of the sentence imposed before being considered for parole. Specifically the guideline states:
 A person convicted and sentenced to prison on a charge of first degree murder, as defined in R.I.G.L. 11-23-1 shall serve fifteen (15) years of his/her sentence, before being considered for parole release.
In November of 1988, December of 1989, and December of 1990, Harold Tillinghast ("the petitioner"), who was convicted of first degree murder, appeared before the Parole Board ("the board"). Prior to his initial appearance in November of 1988, the petitioner had completed the requisite 10 years of his sentence and was therefore eligible for parole pursuant to § 13-8-13. However on all three occasions the board voted unanimously to deny parole to the petitioner.[3] As the primary reasons for denying parole to the Petitioner, the board cited to nature of the crime committed, the length of the sentence imposed (life imprisonment) and the recently adopted parole guidelines which suggest that persons convicted of first degree murder serve 15 years before being looked upon favorably for parole. Furthermore, in November of 1988, the board indicated that the petitioner was previously charged with escape, and in December of 1989, the board pointed out that § 13-8-13 was recently amended to provide that those sentenced to life imprisonment must first serve 15 years before becoming eligible for parole.
On March 19, 1991, petitioner filed an application for postconviction relief. In support of his application, petitioner raises several issues that will be addressed in the order in which they are presented in petitioner's memorandum of law.
I.
WHETHER THE PAROLE BOARD, IN EXERCISING ITS DELEGATED POWERS,HAS EXCEEDED ITS AUTHORITY IN ADOPTING GUIDELINES WHICHCONTRAVENE THE RHODE ISLAND GENERAL LAWS, AND SUCH ACTIONS AREWITHIN THE AMBIT OF THE EX POST FACTO CLAUSE.
The application of parole guidelines to a prisoner's case does not violate the constitutional prohibition against ex post facto laws, when there has been no change in the parole-eligibility statute between the time of the prisoner's sentencing and the time of parole consideration. In ReSkawinski, 538 A.2d 1006 (R.I. 1988). In Skawinski, the petitioner was convicted and sentenced on charges of robbery and assault. The parole statute in effect at the time of petitioner's sentencing generally provided that a prisoner could become eligible for parole upon completion of one third of his or her sentence. The relevant parole guidelines adopted subsequent to Skawinski's conviction suggested that a person convicted and sentenced on a charge of assault serve two-thirds of the sentence before being considered for parole release. The petitioner claimed that the application of the revised guidelines to his case violated the constitutional prohibition against ex post facto laws. The court held that the application of the parole guidelines to petitioner's case did not violate the ex post facto clause, where there was no change in the parole eligibility statute between the time petitioner was sentenced and the time of parole consideration. Id. at 1010. The court further explained that the parole standards adopted pursuant to § 13-8-14.1 are merely procedural guidelines used in the exercise of discretion of the parole board in evaluating a prisoner's petition for parole. Id. The court also noted that the Legislature intended the parole board to exercise broad discretion and to deviate
from the guidelines when individual circumstances warrant. Id.
The court concluded that the parole board may, in its discretion, grant parole prior to the time set by the applicable standards or deny an application on or after the time set in the applicable standards, but in either case must set forth in writing the rationale for its determination. Id.
In the instant case, the petitioner was statutorily eligible for parole after completing 10 years of his sentence. The parole board, however, has consistently applied the 15 year guideline to the petitioner's case when evaluating his applications for parole. The petitioner claims that application of the guidelines to his case violates the constitutional prohibition against ex post facto laws.
It is axiomatic that for a law to be a ex post facto it must be more onerous than the prior law. Dobert v. Florida, 432 U.S. 282, 294, 97 S.Ct. 2290, 2299, 53 L.Ed.2d 344 (1977); Lerner v.Gill, 751 F.2d 450, 455 (1st Cir. 1985). Here the petitioner's required incarceration before parole eligibility was ten years, and it has always remained ten years. Insofar as the purpose of the ex post facto clause is to give persons a fair warning of the punishment they can expect for their crimes, petitioner has not been made any worse by the action of the parole board. The parole standards at issue are merely procedural guidelines that are used in the exercise of discretion of a parole board in evaluating a prisoner's petition for parole. In Re Skawinski at 1010.
Therefore, the Court finds that the application of the parole guidelines to petitioner's case does not violate the constitutional prohibition against ex post facto laws, since there has been no change in the parole statute between the time of petitioner's sentencing and the present time. The petitioner became parole eligible after serving the requisite 10 years of his sentence, and has remained eligible since that point. Finally it should be noted that at no time does a defendant have an absolute right to receive parole at the time of parole consideration. Lee v. Kindelan, 80 R.I. 212, 95 A.2d 51 (1953).
II.
WHETHER THE DEFENDANT/PETITIONER HAROLD TILLINGHAST HAS ASIGNIFICANT EQUAL PROTECTION CLAIM OF CONSTITUTIONAL DIMENSION,IN THAT, THE PAROLE BOARD IS APPLYING ITS GUIDELINES IN ANARBITRARY AND CAPRICIOUS MANNER AND THEREFORE IS TREATINGTILLINGHAST DISSIMILARLY THAN OTHER INDIVIDUALS WHO HAVE APPEAREDFOR PAROLE CONSIDERATION AND RELEASE.
The petitioner contends that because other prisoners serving life sentences were paroled prior to fulfilling the 15 year guideline the board has violated his right to equal protection of the laws. This argument is without merit. The court inSkawinski supra explained that the Legislature intended the parole board to exercise its broad discretion and to deviate from the guidelines when individual circumstances so warrant. Therefore, the parole board may in its discretion, grant parole prior to the time set by the applicable standards or deny an application on or after the time set in the applicable standards.Id. at 1010. Moreover a close reading of § 13-8-14.1 reveals that . . . "the board shall consider the applicable standard prior to rendering a decision on a parole application, and may make a decision at variance with that standard only upon a finding that such a determination is warranted by individualized factors such as the character and criminal record of the applicant, the nature and circumstances of the offense or offenses for which the applicant was sentenced, and the conduct of the applicant while incarcerated". . . However because the parole board is limited in its grant of authority by § 8-13-14, several criteria must be considered when evaluating an individual application for parole, regardless of whether the prisoner is eligible pursuant to a statute or guideline.
On each occasion when the parole board has voted to deny parole to the petitioner they have recognized that he is serving a life sentence for a conviction of first degree murder. Furthermore, in November of 1988, the board indicated that the petitioner was previously charged with escape, and in December of 1990, the board recognized that as public servants they "must take into account the general tenure of the State of Rhode Island in dealing with severe criminal deliberations." It is evident then, that the board has complied with its statutory obligations. As mandated by § 13-8-14.1 the board has considered the nature and circumstances of the offense for which the petitioner was sentenced, and his conduct while incarcerated. Moreover, the board has recognized the limitations that § 13-8-14 places on their discretion and authority to grant parole to prisoners. Specifically, § 13-8-14(b) which in pertinent part provides that parole shall not be granted to any prisoner if release would depreciate the seriousness of his offense or promote disrespect for the law. Therefore, the court finds that the parole board has not acted arbitrarily, nor have they denied the petitioner his right to equal protection of the laws.
III.
WHETHER THE DEFENDANT/PETITIONER HAROLD TILLINGHAST HAS A STATECREATED LIBERTY INTEREST IN PAROLE BY VIRTUE OF RHODE ISLANDGENERAL LAWS 13-8-14 AND 13-8-14.1 AND THE DECISIONS INGREENHOLTZ v. NEBRASKA AND PETRARCA v. STATE OF RHODE ISLAND. In Petrarca v. State of R.I., 583 F. Supp. 297, (D.R.I. 1984), the court held that when the legislature enacted §13-8-14.1 it created a cognizable liberty interest in parole release. 583 F. Supp. at 301. The court explained that the statutory mandate requiring the board to adopt standards to be utilized, combined with the requirement of written guidelines created a protectable expectation of parole. Id. It is not disputed that the petitioner has a protectible expectation of parole; however, it appears that he misconstrues to what this interest entitles him.
In Greenholtz v. Inmates of the Nebraska Penal andCorrectional Complex, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979) the court held that a state proceeding which provides prison inmates who are eligible for parole with an opportunity to be heard at the parole hearings, and informs the inmate in what respects he falls short of qualifying for parole when parole is denied, affords the process that is due under the circumstances.Id.
The Rhode Island procedure affords an opportunity to be heard, and when parole is denied the board informs the inmate in what respects he falls short of qualifying for parole; this affords all the process that is due under these circumstances. The Constitution does not require more.
IV.
WHETHER THE PAROLE BOARD HAS NOT FULFILLED ITS LEGAL OBLIGATIONSACCORDING TO THE RHODE ISLAND SUPREME COURT'S DECISION IN STATEv. OUIMETTE AND DEFENDANT/PETITIONER TILLINGHAST HAS NOT BEENPROVIDED WITH THE PROPER WRITTEN REASONS FOR HIS PAROLE DENIAL INVIOLATION OF RHODE ISLAND LAW.
In State v. Ouimette, 117 R.I. 361, 367 A.2d 704 (1976), the court held that minimum standards of due process require any parole denial to be accompanied by a statement of reasons sufficient to enable a reviewing court to determine if parole has been denied for permissible reasons.
The petitioner contends that the board has not provided him with sufficient reasons when denying his applications for parole. The petitioner claims that the board is relying exclusively on the 15 year guideline, even though he satisfies all of the statutory criteria set out in § 13-8-13. The petitioner also claims that the board considered factors it is not permitted to consider when they evaluated his applications for parole. The petitioner argues that these impermissible factors include the fact that in denying parole the board noted that the legislature has recently increased parole eligibility from 10 to 15 years for those serving life sentences and stated its concern regarding the general tenure of the state of R.I. when dealing with severe criminal deliberations.
On each of the three occasions the petitioner has been denied parole, the board has satisfied its statutory obligations. In each decision the board has noted that the petitioner is serving a life sentence for murder which is in itself a severe criminal deliberation, and that the guidelines suggest he complete 15 years of this sentence before being considered for parole release. Additionally, § 13-8-14.1 mandates that the board consider the relevant guideline as well as the nature of the offense for which the applicant was sentenced. There is no question that the board considered the heinous nature of this particular offense when it denied petitioner's parole applications. Further, the discretion conferred on the board in §13-8-14.1 is limited by § 13-8-14 which requires the board to evaluate the applicants prison record and to consider whether release would "depreciate the seriousness of the offense or promote disrespect for the law." This the board has done. Therefore, merely because the board has cited to other rationale than that specifically enumerated in the statutes does not depreciate the soundness of their decisions. Indeed, the board has followed the mandates of Ouimette and the relevant statutes. The board has also supplied the petitioner and this Court with sufficient and permissible reasons to deny his applications for parole.
CONCLUSION
There has been no change in the parole statute between the time of petitioner's sentencing and the present time. Under the parole statute, the petitioner has been and still is eligible for parole. Consequently, the application of the parole guidelines to the petitioner's case does not violate the constitutional prohibition against ex post facto laws. Additionally, the relevant parole standards are merely procedural guidelines used in the exercise of discretion of the board in evaluating a prisoner's applications for parole. With respect to the petitioner's argument that the board has arbitrarily applied the parole guidelines, it is clear that the Legislature intended the board to exercise its discretion and to deviate from the guidelines when individual circumstances so warrant. Finally, in recognizing the petitioner's protectible liberty interest in parole, the board has afforded him all the process that is due him under the circumstances. The petitioner has had an opportunity to be heard, and the board has on each occasion informed him in what respects he falls short of qualifying for parole. Pursuant to the relevant statutes, each decision to deny the petitioner parole release has been accompanied by a written statement of permissible reasons.
Therefore, for all of the above reasons, the Court denies the petitioner's application for postconviction relief.
[1] The text of this statute is as follows:
13-8-13. Parole of life prisoners and prisoners with lengthy sentences. — In case of a prisoner sentenced to imprisonment for life, such permit may be issued at any time after such prisoner has served not less than ten (10) years imprisonment provided, however in case of a prisoner serving a sentence or sentences of a length making him ineligible for a permit in less than ten (10) years pursuant to § 13-8-9 and § 13-8-10, such permit may be issued at any time after such prisoner has served not less than ten (10) years imprisonment, and provided further that the aforesaid permit shall be issued only by a unanimous vote of all the attending members of the board, providing that not less than four members are present, and whenever after the issue of such permit such prisoner shall be pardoned, then the control of the board over such prisoner shall cease and determine; provided, however, that in case of a prisoner sentenced to imprisonment for life who is convicted of escape or attempted escape from the lawful custody of the warden of the adult correctional institutions such permit may be issued only after such prisoner has served not less than twenty-five (25) years imprisonment; and, provided, further, that for each subsequent conviction of such escape or attempted escape, an additional five (5) years shall be added to the time so required to be served.
[2] The new statute reads:
13-8-13. Parole of life prisoners and prisoners with lengthy sentences. — (a) In case of a prisoner sentenced to imprisonment for life, such permit may be issued at any time after such prisoner has served not less than ten (10) years imprisonment provided, however in case of a prisoner serving a sentence or sentences of a length making him or her ineligible for a permit in less than ten (10) years pursuant to §§ 13-8-9 and 13-8-10, such permit may be issued at any time after such prisoner has served not less than ten (10 years imprisonment, provided, however, that in the case of a prisoner sentenced to imprisonment for life for a first or second degree murder committed after [July 10, 1989], such permit may be issued only after such prisoner has served not less than fifteen (15) years imprisonment, and provided further that the aforesaid permit shall be issued only by a unanimous vote of all the attending members of the issued only by a unanimous vote of all the attending members of the board, providing that not less than four members are present, and whenever after the issue of such permit such prisoner shall be pardoned, then the control of the board over such prisoner shall cease and determine; provided, however, that in case of a prisoner sentenced to imprisonment for life who is convicted of escape or attempted escape from the lawful custody of the warden of the adult correctional institutions such permit may be issued only after such prisoner has served not less than twenty-five (25) years imprisonment; and, provided, further, that for each subsequent conviction of such escape or attempted escape, an additional five (5) years shall be added to the time so required to be served.
(b) In case of a prisoner sentenced consecutively to more than one life term, for crimes occurring after [May 7, 1981], such permit may be issued only after such prisoner has served not less than ten (10) years consecutively on each life sentence; provided, however, that nothing contained in this subsection shall be construed as permitting the issuance of such a permit when a prisoner who has been sentenced consecutively to more than one life term for crimes occurring before [May 7, 1981] has served not less than ten (10) years on each life sentence.
[3] In December of 1990, board member Victoria Almeida abstained from any questioning or taking part in the vote.