Luis M. ESTRADA, Jr.

v.

Dr. Kenneth R. WALKER et al.

No. 98–220–Appeal.

Supreme Court of Rhode Island.

Dec. 20, 1999.

Richard K. Corley, Providence, for Plaintiff.

Virginia M. McGinn, Ronald R. Gendron, Providence, for Defendants.

Present: WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG JJ.

## OPINION

BOURCIER, Justice.

This case comes before us on the appeal of the applicant, Luis M. Estrada, Jr. (applicant or Estrada) to review the denial of his application for postconviction relief. For the reasons set forth below, the appeal is denied and the judgment of the Superior Court is affirmed.

### Case Travel/Facts

In 1988, Estrada was convicted of a violent armed robbery and was sentenced to serve sixty years of a seventy-year sentence. The remaining ten years were suspended with probation. His appeal was denied, and his conviction and sentence were affirmed by this court on February 25, 1988. *See State v. Estrada,* 537 A.2d 983 (R.I.1988). Subsequently, the trial justice granted the applicant's motion to reduce sentence and sentenced him to sixty years imprisonment, with fifty to serve and ten years suspended with probation. The applicant now seeks relief from the denial of parole by the parole board (board).

Estrada's conviction stems from his participation in a violent armed robbery at the Automatic Chain Company in Providence on January 27, 1984. On that day, at approximately 1:35 p.m., the offense began when a young man appeared in the sales room, jumped over the store's sales counter brandishing a revolver, and ordered the sales staff to lie on the floor. Simultaneously, three men began an assault on the adjacent guard area and gained access to the vault. At least one of these men displayed a gun as they shoved a guard and an employee to the ground. The robbers then stuffed duffel bags with gold and cash and fled to an awaiting getaway car.

At trial, several witnesses linked Estrada to the crime. The security guard who permitted the robbers to enter the locked premises, Michael Wilson (Wilson), testified that before the robbery, Estrada and his brother came to his home one night and demanded that he disclose to them the layout of the business and its security system. He further testified that after receiving a threatening phone call shortly after the nighttime visit from someone he believed to be either Estrada or someone associated with Estrada, he did not alert his employer or the police about the incident.

A fellow member of the robbery gang, Latrall Malone (Malone), testified for the state. He testified that Estrada was directly involved in the planning and execution of the armed robbery and also he corroborated Wilson's testimony concerning the Estrada brothers' nighttime visit to Wilson's home.

Loni Worthington (Worthington), girlfriend of Estrada's brother, also testified as a state's witness. She related that on the evening of the armed robbery she witnessed Estrada and the other members of the gang carry gold-filled duffel bags into her cousin's house and that later, she went with them to New York. Worthington testified that during the revelries on the New York trip, she heard the men boast about "how they pulled it off" and at various times use the terms "Automatic Chain" and "jewelry factory." Most damning, however, was Worthington's testimony that on the eve of trial, Estrada requested her to go to Connecticut and remain there

for the duration of the trial and that, while there, he would provide for her room and board.

After his conviction for the armed robbery and while serving his sentence at the Adult Correctional Institutions (ACI), Estrada, in September of 1991, was suspected of being involved in the firebombing of the dwelling house of an ACI prison security lieutenant. He was immediately transferred into administrative segregation at the ACI and given notice that a classification board hearing would be convened to consider his involuntary transfer to an out-of-state prison facility. At the classification board hearing, at which the applicant was represented by counsel, the board received testimony from an ACI inspector, who informed the board that Estrada was a suspect in the firebombing and was an imminent threat to the safety and security of the prison. At the conclusion of the hearing, the classification board voted unanimously to transfer Estrada to a prison out of state. Subsequently, in October 1991, he was involuntarily transferred to a federal prison in Indiana.

The applicant appealed the classification board's transfer decision to the United States District Court for the District of Rhode Island. *See Estrada v. Vose*, C.A. No. 92–0059L. In his decision, filed April 9, 1993, United States Magistrate Judge Timothy M. Boudewyns denied Estrada's claims for relief and determined that the transfer was executed within due process guidelines. The magistrate granted the ACI director's motion for summary judgment. The applicant did not appeal.

In February 1994, Estrada became eligible for parole and requested that it be granted. On June 9, 1994, after reviewing his application, the parole board acknowledged that the applicant, while incarcerated, had made commendable rehabilitation progress by attending various prison study programs but denied his application on ground that a grant of parole "at this time would depreciate the seriousness of the offense." The parole board stated that it would review his parole request again in two years.

Not content to wait the two years, Estrada, in March, 1995, filed a pro se application seeking postconviction relief in the Superior Court.[1] In his pro se application, he asserted that the parole board had denied his request for parole without giving adequate reasons for the denial. In addition, he asserted that the parole board had abused its discretion by requiring him to gradually return to the community when he was precluded from doing so while detained in a federal prison and, that the parole board had denied him equal access to the legislatively created state work release program in violation of his rights guaranteed by the Fourteenth Amendment. Meanwhile, pending hearing on the postconviction application, the parole board, on June 16, 1996, denied a second request for parole submitted by the applicant, and on July 15, 1997, a third request for parole also was denied.

On March 11, 1998, Estrada's application for postconviction relief was reached for hearing before a trial justice in the Superior Court. At that hearing, he was represented by court-appointed counsel. Upon submission of cross motions for summary judgment, the trial justice granted the state's motion and denied the applicant's. He seeks our review.

### Standard of Review

██ "On an appeal from a summary judgment, we review the record de novo to ascertain whether any genuine issue of material fact exists, and whether the moving party is entitled to a judgment as a matter of law." *Walker v. Jackson*, 723 A.2d 1115, 1117 (R.I.1999) (per curiam). In so doing, we "scour the record to dis-

---

1. Subsequently, the Superior Court determined Estrada to be indigent and appointed counsel at the expense of the state.

cern whether any legally competent evidence supports the lower tribunal's decision and whether the decision maker committed any reversible errors of law * * *." *Kent County Water Authority v. State Department of Health,* 723 A.2d 1132, 1134 (R.I.1999). On a petition for certiorari to review a trial justice's grant of summary judgment our review is "limited to an examination of the record only for alleged errors of law." *See D'Ambra v. North Providence School Committee,* 601 A.2d 1370, 1374 (R.I.1992). If we discern in the record competent evidence that can support the hearing justice's decision, then in the absence of any error of law that might have affected the validity of that decision, we will not disturb it. *See id.*

### Analysis

■ General Laws 1956 chapter 9.1 of title 10 governs the statutory remedy of postconviction relief. *See Jacques v. State,* 669 A.2d 1124, 1128 (R.I.1995) (per curiam). "In a proceeding under this Chapter the [applicant] *generally bears the burden of proving his allegation by a preponderance of the evidence.*" *Jacques,* 669 A.2d at 1129 (citing *Palmigiano v. Mullen,* 119 R.I. 363, 377 A.2d 242 (1977)). Section 10–9.1–6(c) "permits the trial justice to grant a motion for summary disposition of the application when based upon the pleadings, discovery, and affidavits introduced, no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law." *Jacques,* 669 A.2d at 1129.

Postconviction relief is available to:

"(a) Any person who has been convicted of, or sentenced for, a crime, a violation of law, or a violation of probationary or deferred sentence status and who claims:

\* \* \*

(5) That his or her sentence has expired, his or her probation, parole, or conditional release unlawfully revoked, or he or she is otherwise unlawfully held in custody or other restraint." Section 10–9.1–1(a).

General Laws 1956 chapter 8 of title 13 governs parole in the Rhode Island penal system. *See Skawinski v. State,* 538 A.2d 1006, 1007 (R.I.1988). There, the "Legislature has provided a statutory scheme that creates a parole board and generally empowers the parole board to grant parole to any prisoner within its control upon completion of a specified portion of the sentence imposed." *Id.*

In *Skawinski,* we stated:

"On January 27, 1983, the Rhode Island State Parole Board adopted a new set of standards for certain crimes, specifying the period required to be served before one becomes eligible for parole. The Legislature vested the parole board with authority to adopt these new guidelines through its enactment of § 13–8–14.1, as amended by P.L.1982, ch. 375, § 1 which provides as follows:

'At least once each calendar year commencing on January 1, 1983, the parole board shall adopt standards to be utilized by the said board in evaluating applications for parole of persons convicted of a criminal offense and sentenced to the [A]dult [C]orrectional [I]nstitutions. Said standards *shall establish, with[in] the range of parole eligibility set by statute, the portion of a sentence which should be served upon conviction for each category of criminal offense prior to parole,* and shall serve as guidelines for the board in making individual parole determinations. *The board shall consider the applicable standard prior to rendering a decision on a parole application,* and may make a determination at variance with that standard only upon a finding that such determination is warranted by individualized factors such as the character and criminal record of the applicant, the nature and circumstances of the offense or offenses for which the appli-

# 1030

cant was sentenced, the conduct of the applicant while incarcerated, and the criteria set forth in § 13–8–14. In each case where the board grants an application prior to the time set by the applicable standard or denies an application on or after the time set by that standard, the board shall set forth in writing the rationale for its determination.'" (Emphasis added.) *Skawinski*, 538 A.2d at 1008.

With respect to convictions for armed robbery the parole guideline states:

"A person convicted and sentenced to prison on a charge of Armed Robbery, as defined in R.I.G.L. 11–39–1, should serve two-thirds (⅔) of his/her sentence before being considered for parole release."

Section 13–8–14(a) limits the parole board's authority for granting parole to a prisoner by providing that parole shall not be granted to any prisoner "unless it shall appear to the parole board:

"(a) * * *

"(1) That the prisoner has substantially observed the rules of the institution in which confined, as evidenced by reports submitted to the board by the director of the department of corrections, or his or her designated representatives, in a form to be prescribed by the director;

"(2) That release would not depreciate the seriousness of the prisoner's offense or promote disrespect for law;

"(3) That there is a reasonable probability that the prisoner, if released, would live and remain at liberty without violating the law;

"(4) That the prisoner can properly assume a role in the city or town in which he is to reside. In assessing the prisoner's role in the community the board shall consider:

(i) Whether or not the prisoner has employment;

(ii) The location of his or her residence and place of employment; and

(iii) The needs of the prisoner for special services, including but not limited to, specialized medical care and rehabilitative services."

In the present case, the parole board denied Estrada's request for parole by stating:

"He is serving a very lengthy sentence and the Board feels that to parole him at this time would depreciate the seriousness of the offense. These robberies involved the use of firearms. However, the Board would like to commend Mr. Estrada for setting goals and one-by-one meeting them successfully. The Board would like to see him work through the system and obtain some work release and furlough experience as well. He will be seen again in 2 years."

A second request for parole was denied by the board on July 16, 1996, when the parole board stated:

"We commend him for his good progress. However we believe that to parole him now would depreciate the seriousness of the offense. We will review him in one year."

On July 15, 1997 the parole board denied the applicant's third request for parole, stating:

"Once again, the Board feels to parole Mr. Estrada at this time would depreciate the seriousness of his crime and the Board wishes again to commend Mr. Estrada, however, on the progress that he is making. The Board realizes that there is not much more that Mr. Estrada can do in his current facility and it is suggested to him that he contact Director Vose for a possible transfer to a facility which would provide for a more gradual return to the community. We will see him again in eighteen (18) months."

The applicant asserts that the parole board's reasons for denying his requests were inadequate, constituted an abuse of discretion, and were in violation of his

Fourteenth Amendment due process right. We disagree.

■■■ "[D]ue process only entitles the parole applicant an opportunity to be heard and to be informed in what respects the applicant falls short of qualifying for parole." *Bernard v. Vose*, 730 A.2d 30, 32 (R.I.1999) (order). However, "there is no 'constitutional or inherent right' to parole[.]" *Bishop v. State*, 667 A.2d 275, 278 (R.I.1995) (quoting *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668, 675 (1979)). Recognizing the parole board's discretion when evaluating a prisoner's petition for parole, this Court stated that "the parole board may, in its discretion, grant parole prior to the time set by the applicable standards or deny an application on or after the time set in the applicable standards." *Skawinski*, 538 A.2d at 1010. "In either case, the board must set forth in writing the rationale for its determination" but "no onerous burden of proof is required before the board may deviate from the norm." *Id.* The parole board is required to exercise its discretion within the boundaries set by statute. *See id.*

There is nothing in the record before us to indicate that the parole board deviated from its clearly established guidelines when it denied Estrada's request for parole. The applicant was neither granted parole prior to the time set by the applicable standards nor was he denied parole on or after the time set by the applicable standards. The applicable guidelines provide that Estrada should serve two-thirds, or just over thirty-three years, of his sentence before achieving parole guideline eligibility. Consequently, the trial justice did not err in denying the application for postconviction relief when he observed that Estrada had served less than two-thirds of his sentence as required by the guidelines. We might agree with the trial justice's implied suggestion that, although not necessary, it might be better practice for the parole board to provide a more detailed explanation for its denial of a parole application even when it is adhering to the clear guidelines, but we reiterate, however, that failure to provide such an explanation is not ground that warrants the grant of an application for postconviction relief.

■■■ The applicant's additional assertion that the parole board denied him equal access to the legislatively created work release program in violation of his rights guaranteed by the Fourteenth Amendment is without merit and warrants but passing comment.

■■■ "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Bishop*, 667 A.2d at 278 (quoting *Price v. Johnston*, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356, 1369 (1948)). "While there can be little doubt of the desirability of maintaining a meaningful schedule of programmed activity for inmates, the courts have never found that a failure to provide rehabilitative programs to be objectionable on constitutional grounds." *Jaben v. Moore*, 788 F.Supp. 500, 505 (D.Kan.1992). *See Also Lovell v. Brennan*, 566 F.Supp. 672 (D.Me. 1983) ("the courts have not recognized a constitutional right to rehabilitation for prisoners"), *aff'd*, 728 F.2d 560 (1st Cir. 1984). Because there is no constitutional right to work release, Estrada's assertion that he was denied equal access to the legislatively created work release program in violation of the Fourteenth Amendment must fail.

Likewise, Estrada's assertion that the parole board abused its discretion by requiring him to gradually return to the community, when he is precluded from doing so while confined in federal prison, is without merit.

■■■ The Legislature, in promulgating G.L.1956 § 42–56–21 and G.L.1956 § 12–19–2, contemplated "a complete legislative delegation of the responsibility for establishing and administering the rules, regulations, and policies necessary to run a work-

release program" to the director of prisons. *State v. Pari,* 553 A.2d 135, 138 (R.I.1989). This authority "implicitly includes the discretion to determine when a prisoner qualifies to enter the work-release program * * *." *Id.*

In denying the applicant's first request for parole, the parole board stated that it "would *like* to see him work through the system and obtain some work release and furlough experience." (Emphasis added.) In 1997, it "*suggested* to him that he contact Director Vose for a possible transfer to a facility which would provide for a more gradual return to the community." (Emphasis added.) This language clearly shows that the parole board was merely suggesting that Estrada might seek his transfer back to the ACI so as to permit him to obtain some work release experience. It did not, nor could it, order that the applicant be transferred back to the ACI and to obtain work release in light of the director's ultimate discretion to classify prisoners and to grant work release. *See, e.g., Bishop,* 667 A.2d at 278–79 (parole board has no legal authority or right to demand or to require that the director classify a prisoner).

## Conclusion

On the basis of the record before us, we conclude that the trial justice did not err in granting the state's motion for summary judgment nor in denying Estrada's application for post conviction relief. For the foregoing reasons, Estrada's appeal is denied and the judgment of the Superior Court is affirmed. The record in this case is remanded to the Superior Court.