Ida M. BOCHNER et al.

v.

PROVIDENCE SCHOOL COMMITTEE.

82–272–M.P.

Supreme Court of Rhode Island.

April 3, 1985.

Richard A. Skolnik, Lipsey & Skolnik Esquires, Ltd., Providence, for plaintiff.

Vincent J. Piccirilli, Providence, for defendant.

## OPINION

SHEA, Justice.

This matter is before the Supreme Court on a petition for a common-law writ of certiorari filed by ten former Providence school teachers to review a decision of the Superior Court that upheld their terminations and suspensions from employment by the Providence School Committee.[1] We affirm in part and reverse in part.

The following facts are not disputed. The petitioners are teachers who were employed by the city of Providence during the 1976–1977 school year. On February 11, 1977, the Providence Superintendent of Schools notified petitioners by letter of resolutions to be presented to the committee at its meeting on February 17, 1977, that would suspend or terminate their employment at the end of the 1976–1977 school year. At that meeting, the committee adopted, inter alia, resolutions Nos. 104, 105, 106, and 108, which terminated or suspended petitioners' employment. Because consideration of their claims turns on their employment status and the reasons given for their dismissals, petitioners will be classified in three groups, according to the particular resolutions under which they were dismissed.

Specifically, resolution 106 authorized the suspensions of fourteen teachers, including group-1 petitioners—Ida M. Bochner, Harold Jones, and Marcia Lima—because of a substantial decline in the pupil population. In February 1977 the projected decrease in pupil enrollment in the Providence schools for the 1977–1978 school year was 273, and the actual decrease in enrollment in September 1977 was 536. Resolution 105 authorized the terminations of forty-five long-term substitute teachers, including group-2 petitioners—Angelo DeSimone and James P. McCabe, Jr.—because teachers with greater seniority, for whom this group served as long-term substitutes, were returning to work. Resolution 108 authorized the terminations of twenty-five teachers, including group-3 petitioners—Martha Boto, Barbara Strawn, Elaine Scanlon, Ann Colanino, and James Robinson—

1. Although seventeen teachers originally challenged the school committee's action, only ten have pursued their claims to this court.

as a part of "a program reorganization and the supervision of curricula," which was needed to make room on the teaching staff for more senior teachers whose positions as department heads and department chairpersons were abolished by a concurrent resolution, resolution 104.

After holding hearings requested by petitioners, the full school committee affirmed petitioners' dismissals on February 28, 1978. The petitioners appealed the decision to the Rhode Island Commissioner of Education, but their appeal was denied on September 19, 1978.[2] The petitioners next appealed to the Board of Regents, which sustained the commissioner's decision on March 22, 1979. On June 23, 1979, petitioners filed a complaint in Superior Court pursuant to G.L.1956 (1969 Reenactment) § 16–13–4, challenging their dismissals and the decision of the Board of Regents.

Upon a motion granted by the Superior Court, this case was remanded to the commissioner of education for his reconsideration of group-3 petitioners' claims in light of evidence of an arbitration decision and its subsequent confirmation by the Superior Court and this court. In that decision, the arbitrator determined the abolition of department-head and chairperson positions pursuant to resolution 104 to be a violation of the collective-bargaining agreement and ordered the reinstatement of the former department heads and chairpersons.

On remand, the associate commissioner held that no statutory rights of group-3 petitioners were violated by the school committee's action dismissing them pursuant to resolution 108, notwithstanding the arbitrator's ruling that resolution 104 violated the collective-bargaining agreement. On October 22, 1980, their appeal was dismissed

and the action of the school committee affirmed. The decision was appealed to the Board of Regents, which again sustained the group-3 petitioners' dismissals.

All three groups of petitioners were heard before a justice of the Superior Court, who found authority to review the decision of the Board of Regents in G.L. 1956 (1969 Reenactment) § 16–39–4.[3] In his decision, the trial justice agreed with the Board of Regents that (1) group-1 petitioners had been properly suspended under § 16–13–6 owing to the projected (and actual) decline in student population; (2) group-2 petitioners had been properly terminated on account of the substitute nature of their employment and the return of teachers with greater seniority; and (3) group-3 petitioners' proper tribunal was an arbitration proceeding, and no statutory rights of petitioners had been violated by their terminations. The trial justice denied their appeals in a judgment entered on June 7, 1982. The petitioners then sought a writ of common-law certiorari, which was issued by this court on October 18, 1982.

■ The legislatively mandated procedure in Rhode Island for review of disputes involving a tenured teacher dismissed for cause or a non-tenured teacher whose contract has not been renewed is governed by § 16–13–4. Section 16–13–4 provides in part that "[a]ny teacher aggrieved by the decision of the school board shall have right of appeal to the state department of education and shall have the right of further appeal to the superior court." Thus, this section provides for a four-tier review process involving the school board, the commissioner of education, the Board of

**2.** The appeal was heard and decided by the associate commissioner of education, under authorization from the commissioner.

**3.** The trial justice's reliance on G.L.1956 (1969 Reenactment) § 16–39–4 as a grant of jurisdiction was misplaced. Section 16–39–4, which provides for review of controversies in school matters via the Administrative Procedures Act, does not apply to actions of the Board of Re-

gents because G.L.1956 § 16–60–10, as enacted by P.L.1981, ch. 32, § 3, exempts the board from judicial review under the act. *See Jacob v. Burke,* 110 R.I. 661, 296 A.2d 456 (1972). However, since this action was properly before the Superior Court on a complaint filed pursuant to § 16–13–4, the trial justice's incorrect reliance on § 16–39–4 will be disregarded.

Regents, and the Superior Court.[4] Because the Legislature failed to provide a vehicle for review of the action of the Superior Court in reviewing actions taken by the Board of Regents, this court established that review of the Superior Court's action will be had by way of a petition for common-law certiorari. *Schiavulli v. School Committee of North Providence*, 114 R.I. 443, 334 A.2d 416 (1975).

■ "When we review a judgment of the Superior Court on a petition for certiorari, our inquiry is limited to determining whether the record reflects evidence, or reasonable inferences that may be drawn therefrom, to support the findings of the tribunal whose decision is being reviewed." *Guarino v. Department of Social Welfare*, 122 R.I. 583, 588–89, 410 A.2d 425, 428 (1980). We examine the record only for alleged errors of law. *School Committee of Providence v. Board of Regents for Education*, R.I., 429 A.2d 1297, 1302 (1981).

The group-1 petitioners were suspended pursuant to § 16–13–6, which provides that "[a] school board may, by reason of a substantial decrease of pupil population, within its school system, suspend teachers in such numbers as are necessitated by the decrease in pupil population; provided, however, that such suspension of teachers shall be in the inverse order of their employment * * * and, provided, further, that such teachers as are sus-

pended, shall be reinstated in the inverse order of their suspension."

Although there is no definition of what constitutes a "substantial decrease," the associate commissioner, the Board of Regents, and the trial justice all found that the school committee's projected decline in pupil enrollment of 273 pupils from the September 1976 enrollment of 20,330 was substantial enough to justify the school committee's suspensions of group-1 petitioners.

The group-1 petitioners, who were terminated because of decline in enrollment, argue that the projected decline in pupil population on which the school committee relied represented only a 1.3 percent loss of the total pupil population, and as such cannot be considered "substantial," under § 16–13–6.[5] The respondent argues that the projected decline of 273 pupils was sufficient to suspend petitioners and that the actual decline of 536 pupils provided even greater support for its action.

■ The suspension of fourteen teachers (the number originally affected by resolution 106) on the basis of a projected decline of 273 pupils is approximately equivalent to a one-to-nineteen teacher-pupil ratio, that is, one teacher suspended for every reduction of nineteen students. The decision to suspend group-1 petitioners on that basis was reasonable, and therefore, we affirm the decisions of the tribunals below.[6]

4. Although we concluded in *Corrigan v. Donilon*, R.I., 433 A.2d 198, 202 (1981), that the sole statutory recourse for substitute teachers who wish to challenge their terminations by a school committee is found within G.L.1956 (1969 Reenactment) chapter 39 of title 16, we believe that judicial economy and fairness to the parties warrant our holding that the jurisdiction of the Superior Court, when invoked pursuant to § 16–13–4, extends to the entire case, including issues raised by group-2 petitioners, who as substitute teachers would otherwise have had no right of appeal to the Superior Court. *See Barber v. Exeter-West Greenwich School Committee*, R.I., 418 A.2d 13, 17 (1980).

5. The petitioners' argument that the school committee terminated, rather than suspended, other

elementary school teachers with greater seniority than theirs in violation of the requirements of § 16–13–6 is not supported by the evidence. Furthermore, they do not have standing to raise this argument.

6. The petitioners place some reliance on an unreported decision of the United States District Court for the District of Rhode Island: *Parkhurst v. D'Amico*, No. 750215 (D.R.I. filed February 6, 1976). It should be noted that the court in *Parkhurst* indicated that had the school committee in that case simply voted to suspend the teachers with the least seniority in accordance with a one-to-nineteen teacher-student ratio, then the decision would not be "so factually deficient as to be arbitrary or capricious." *Id.* at 12.

The group-2 petitioners assert that they were tenured in 1977 by virtue of their having been employed for three consecutive years and that, therefore, they could be dismissed only for "good and just cause" under the Teachers' Tenure Act, § 16-13-3. Section 16-13-3 provides that

"[t]hree (3) successive annual contracts shall be considered evidence of satisfactory teaching and shall constitute a probationary period. Teachers * * * who shall complete the probationary period, shall be considered in continuing service. No such teacher shall be dismissed except for good and just cause."

According to petitioners, they were wrongly terminated because the stated reason for their terminations—that they were long-term substitutes being displaced by more senior teachers returning to duty—does not amount to good cause under § 16-13-3.

■ This court has stated that a long-term substitute is "a teacher who takes over a class when the regular teacher is absent for any number of reasons." *Corrigan v. Donilon,* R.I., 433 A.2d 198, 201 (1981). In the hearings before the school committee, group-2 petitioners testified that they had been employed at several different schools and were filling in for various other teachers. Accordingly, the finding of both the associate commissioner and the Board of Regents that these petitioners were long-term substitutes, not tenured teachers, is substantiated by the record.

■ Contrary to group-2 petitioners' assertion, long-term substitutes are not covered by the Teachers' Tenure Act and do not acquire tenure regardless of their length of service in a school system. *Id.* 433 A.2d at 200. Thus, group-2 petitioners did not have tenure at the time of their dismissals, and as a result the school committee was not bound by § 16-13-3, which requires that no tenured teacher may be dismissed "except for good and just cause."

■ These petitioners received the process that was due them under § 16-39-2, that is, proper notice and hearings. Therefore, the school committee was within its authority in dismissing these petitioners on the basis of their employment as long-term substitutes, and the Superior Court's action upholding their dismissals was proper.

The group-3 petitioners contend that their terminations on the basis of the decision to abolish department-head and department-chairperson positions were invalid because of a collateral finding by an arbitration panel that the abolition of these positions violated the collective-bargaining agreement. They argue that the associate commissioner, the Board of Regents, and the trial justice erred in determining that they should have challenged their dismissals by the school committee in accordance with the provisions of the collective-bargaining agreement then in force, rather than through the appeal process provided in § 16-13-4 or in § 16-39-2. They assert that there is nothing in the statutory right of appeal of aggrieved teachers under either § 16-13-4 or § 16-39-2 that limits them to asserting statutory or constitutional violations before they can avail themselves of the appeal process. In any event, they contend that their dismissals, based on the invalid reassignment of department heads who were later reinstated, violated the good-and-just-cause proviso under § 16-13-3 and, thus, were statutory violations entitling them to the appeal process.

The respondent argues that the Superior Court was correct in upholding the associate commissioner's ruling that group-3 petitioners were limited to grievance proceedings in the absence of any alleged statutory or constitutional violations and in dismissing the contractual claims as a result. According to respondent, once these petitioners selected the review process, they were precluded from asserting that the associate commissioner had no power to dismiss their claim.

■ The relevant language of the collective-bargaining agreement, as found in the

associate commissioner's decision, states that

"[t]he Committee and the Union agree that during the life of this Agreement any and all disputes arising between them shall be settled in accordance with the grievance procedure of this Agreement.

"A grievance which was not resolved at Level 4 (the School Committee level) under the grievance procedure may be submitted by the Union to arbitration."

There appears to be no doubt that had the dispute in this case involved simply a question of the terms or conditions of employment, such as workload, hours, or duties, then the arbitration clause should have been invoked. *See School Committee of Pawtucket v. Pawtucket Teachers Alliance,* 120 R.I. 810, 390 A.2d 386 (1978); *Barrington School Committee v. Rhode Island State Labor Relations Board,* 120 R.I. 470, 388 A.2d 1369 (1978). Indeed, the reassignment to full-time teaching duties of the department heads and department chairmen—which to some extent underlay the present petitioners' dismissals—was properly challenged through the grievance procedures specified in the collective-bargaining agreement. Here, however, the dispute was not merely about the conditions of employment; rather, petitioners challenged the termination of their employment.

■ Section 16–13–3 of the Teachers' Tenure Act provides that no tenured teacher may be dismissed "except for good and just cause," and § 16–13–4 of the act provides that any teacher aggrieved by a school board's decision to dismiss him or her "shall have right of appeal to the state department of education and shall have the right of further appeal to the superior court." Even a nontenured, probationary teacher not protected by the good-and-just-cause standard of § 16–13–3 has a right of appeal under § 16–13–4. Section 16–39–2 provides that "[a]ny person aggrieved by any decision or doings of any school committee * * * may appeal to the commission-

er of education * * *." There is nothing in the language of either of those sections that requires an allegation of a statutory or constitutional violation before an aggrieved teacher can invoke it. Furthermore, the claim that the school committee violated § 16–13–3 by dismissing petitioners without good and just cause is in itself a statutory claim, which is sufficient to set into motion the appeals process of § 16–13–4 that requires the associate commissioner to hear the merits of their claims.

■ Therefore, we hold that absent an express relinquishment by the petitioners of their statutory right of appeal, the arbitration clause of the Providence teachers' contract could not revoke their right of appeal under either § 16–13–4 or § 16–39–2. However, since there do not appear to be any findings in the record in regard to group-3 petitioners' actual employment status, that is, whether they were tenured, probationary, or substitute, the cases of these petitioners are remanded in order that the commissioner of education may determine their status and thereafter afford the petitioners in a hearing on the merits whatever process due them that accords with their status.

For the reasons given, the petitions of Ida M. Bochner, Harold Jones, and Marcia Lima arising out of their suspensions pursuant to resolution 106 are denied and dismissed, and the writs heretofore issued are quashed. The petitions of Angelo DeSimone and James P. McCabe, Jr. arising out of their terminations under resolution 105 are denied and dismissed, and the writs heretofore issued are quashed. The petitions of Martha Boto, Barbara Strawn, Elaine Scanlon, Ann Colanino, and James Robinson arising out of their terminations pursuant to resolution 108 are granted, the judgment of the Superior Court with respect to them is vacated, and their cases are remanded to the commissioner of education for proceedings consistent with this opinion.