Linda D'AMBRA

v.

**NORTH PROVIDENCE SCHOOL COMMITTEE.**

No. 90–454–M.P.

Supreme Court of Rhode Island.

Jan. 10, 1992.

Robert S. Ciresi, North Providence, for plaintiff.

Richard Skolnik, Lipsey & Skolnik, Providence, for defendant.

OPINION

FAY, Chief Justice.

The petitioner, the North Providence School Committee, seeks review by writ of certiorari of a decision by the commissioner of education (commissioner), as affirmed by the Board of Regents for Elementary and Secondary Education (board), awarding the respondent, Linda D'Ambra, full-time benefits, salary, and a pay-step increase commensurate with her years of service and experience as a part-time teacher. The petitioner claims that the commissioner erred by (1) finding that the respondent was a "regularly employed" teacher during the 1979 through 1983 school years and (2) awarding the respondent credit for the purpose of placement on the salary scale for that period. The respondent asserts that the petitioner's filing of the petition for certiorari was untimely and that the decision of the board therefore became final. The common-law writ of certiorari having already been issued, we deny the petitioner's petition and affirm the decisions of both the commissioner and the board.

After several years of employment as a per diem substitute teacher in the town of North Providence (town) school system, respondent was hired by the town during the 1979–80 school year as a part-time English-as-a-second language (ESL) tutor. During the school years from 1979 to 1983, respondent provided in-school tutoring to students deemed to be in need of ESL tutoring by the special-education department. The total number of hours worked by respondent was determined by the number of students assigned to her for ESL tutoring. The respondent's schedule was structured according to the students' schedules.

Initially the tutoring was provided on a one-to-one basis; however, some grouping occurred as the program progressed and the number of students in need of ESL tutoring increased. Each year respondent developed her own curriculum. The respondent was not paid pursuant to the contract with the teacher's union in effect at the time; rather she was compensated at an hourly rate.

In 1984 respondent obtained appointment as a full-time permanent teacher, at which time she was placed on the second step of the contractual salary scale. The respondent has since retained employment as a full-time teacher with the town and has advanced one step on the salary scale each year.

On May 18, 1989, respondent appealed to the commissioner, claiming that she was not properly compensated by petitioner during the school years from 1979 to 1983. In a decision filed on January 3, 1990, the commissioner found that respondent was a regularly employed teacher during the 1979 to 1983 school years and therefore was entitled to be placed on the fourth salary step and credited for her services during that period. The petitioner appealed the commissioner's decision to the board, which on August 9, 1990, affirmed the commissioner's decision. Thereafter, on September 20, 1990, petitioner filed a petition for certiorari with this court that was granted on November 16, 1990.

I

The respondent urges this court to refrain from hearing petitioner's appeal, claiming that because the filing of the petition for certiorari was untimely, the decision of the board therefore became final. The board rendered its decision on August 9, 1990, and petitioner filed its petition for certiorari on September 20, 1990, forty-two days later.

General Laws 1956 (1988 Reenactment) §§ 16–39–1 through 16–39–3.1 provide the proper avenue for relief to parties with claims arising under the laws of education. Section 16–39–2 states in pertinent part "Any person aggrieved by any decision or doings of any school committee or in any other matter arising under any law relating to schools or education may appeal to the commissioner of * * * education." Furthermore § 16–39–3 provides for an appeal of the commissioner's decision to the board, stating, "Any decision of the commissioner in these matters shall be subject to an appeal to and review by the board of regents for elementary and secondary edu-

cation." If respondent is still aggrieved after this combination of appeals, then the only judicial recourse available is by petitioning for a writ of common-law certiorari, not by appeal. *Corrigan v. Donilon*, 433 A.2d 198, 202 (R.I.1981); *School Committee of Providence v. Board of Regents for Education*, 429 A.2d 1297, 1301 (R.I.1981); *Slattery v. School Committee of Cranston*, 116 R.I. 252, 261, 354 A.2d 741, 746 (1976); *Jacob v. Burke*, 110 R.I. 661, 669–71, 296 A.2d 456, 461 (1972). Specifically § 16–39–3.1 states:

> "All final decisions made after a hearing by the commissioner of elementary and secondary education or the board of regents for elementary and secondary education, and which are not subject to further judicial or administrative review, shall be enforceable by mandamus or any other suitable civil action in the superior court for Providence County at the request of any interested party. All such decisions of the commissioner or board shall become final if judicial or further administrative review is not properly sought within *thirty (30) days* of their issuance." (Emphasis added.)

■■■■■ The petitioner had thirty days from the date of the board's decision to file a petition for writ of certiorari but was in fact twelve days tardy. It appears that petitioner may have excluded weekends when computing the time limit established by § 16–39–3.1 since the period from August 9, 1990, to September 20, 1990, without weekends, is thirty days.

Rule 20(a) of the Supreme Court Rules provides the guidelines for the computation of time:

> "In computing any period of time prescribed by these rules, by an order of court, or by any applicable statute, the day of the act, event, or default after which the designated period of time begins to run is not to be included. The last day of the period is to be included, unless it is a Sunday or a legal holiday, in which event the period runs until the end of the next day which is neither a Sunday nor a holiday."

Such language implies that weekends are to be included in computing any applicable period of time. We are cognizant of the fact that "[i]n the absence of statutory jurisdiction, this court has discretion in determining whether to grant petitions for certiorari." *Davis v. Rhode Island Board of Regents for Education*, 121 R.I. 473, 477, 399 A.2d 1247, 1249 (1979). Furthermore "the Legislature cannot divest this court of its power to review decisions of subordinate tribunals who exercise a judicial or quasi-judicial function." *Valley Gas Co. v. Burke*, 518 A.2d 1363, 1366 (R.I. 1986) (quoting *Providence Gas Co. v. Burke*, 475 A.2d 193, 195 (R.I.1984)). We are also cognizant of the fact that this court has held that a petition for certiorari shall not be granted when there has been an unreasonable delay caused by a lack of due diligence in seeking relief. However, petitioner's tardiness coupled with what appears to be a reasonable mistake cannot be characterized as an unreasonable delay caused by a lack of due diligence. Accordingly we are of the opinion that the writ for certiorari having already been issued, petitioner's petition should be considered on its merits.

## II

■■■■■ The petitioner argues that the commissioner erred in concluding that respondent was a regularly employed teacher for purposes of receiving a salary credit for the 1979 to 1983 school years. Specifically petitioner contends that since respondent accepted an hourly wage rather than payment pursuant to the existing union contract, she effectively waived any right to compensation pursuant to § 16–7–29. Furthermore, as a per diem substitute teacher who had never worked more than 134 days in any single school year from 1979 to 1983, respondent was not entitled to any benefits provided for in § 16–7–29.

"It is generally recognized that when a statute creates a private right for the public good, the donee of that private right lacks the power either to waive that right or to nullify it by private contract. *See, e.g., School District v. Teachers Retirement Fund Association*, 163 Or. 103, 108,

95 P.2d 720, 722 (1939). Section 16–7–16 indicates that § 16–7–29 was enacted in order to 'provide a quality education for all Rhode Island youth \* \* \*,' clearly a public purpose." *Berthiaume v. School Committee of Woonsocket*, 121 R.I. 243, 250–51, 397 A.2d 889, 894 (1979). In *Berthiaume* we held that as a donee of a private right for the public good, a teacher could not, by his or her acceptance of a per diem rate, waive his or her right to a minimum statutory wage. Accordingly in the instant case, respondent's acceptance of the per diem rate could not have effectively operated as a waiver of her right to compensation under § 16–7–29.

The petitioner's assertion that respondent was no more than a per diem substitute teacher, when contrasted with the commissioner's findings, presents us with an issue of first impression, the outcome of which requires an interpretation of the phrase "regularly employed."

Section 16–7–16 states that the term "regularly employed \* \* \* as applied to certified personnel shall have the same meaning as defined in chapter 16 of this title." Unfortunately, § 16–16–1 fails to provide a working definition of this term. Indeed, in the definition for "teacher" § 16–16–1(2) only refers to the phrase in construing when a substitute teacher qualifies as regularly employed:

" 'Teacher' shall mean a person required to hold a certificate of qualification \* \* \* who is engaged in teaching as his or her principal occupation and is *regularly employed* as a teacher in the public schools \* \* \*. The term [teacher] shall include a person employed as a teacher \* \* \* or any person \* \* \* working in the field of education that holds a teaching \* \* \* certificate and any substitute teacher who serves during a school year at least three-quarters (¾) of the number of days that the public schools are required by law to be in session during the year." (Emphasis added.)

In concluding that respondent was regularly employed during the 1979 to 1983 school years, the commissioner made numerous findings of fact including that respondent:

"was part of the group of 'certified personnel regularly employed in the public schools' of the North Providence public system. Mrs. D'Ambra testified that she took the coursework to obtain the necessary ESL certification, as soon as she was informed that it was needed. Throughout the years in question she taught for the entire length of the school year, albeit on a part-time basis, tutoring children in school, during regular school hours. Her work schedule was the result of the number of children assigned to her for such tutoring and structured to accommodate the need to pull these children out from their classrooms at such times as would cause the least amount of interference with their other coursework. While the record does not reflect that appellant provided such services on a daily basis, the instruction was pursuant to a schedule which, once developed at the beginning of each semester, was strictly adhered to. It established the appellant as a regular, part-time instructor in the North Providence school system, and entitles her to compensation under the salary schedule in effect for such teachers during those years."

Furthermore, the commissioner noted that neither § 16–7–29 nor § 16–16–1 defines what "regularly employed" means and therefore, absent a contrary statutory intent, an ordinary and plain meaning should be given to its interpretation. Such a construction was consistent with that which the commissioner had previously applied to the phrase in *Morris v. School Committee of the Town of Hopkinton*, November 4, 1975, and most recently in *D'Ordine v. North Providence School Committee*, November 30, 1988.[1]

---

1. The commissioner noted that respondent "Helen D'Ordine served in the same capacity in the North Providence school system as the appellant and during the same time period. Our finding that Ms. D'Ordine was regularly employed is consistent with our conclusion as to Ms. D'Ambra, although we do note that the record in *D'Ordine* \* \* \* indicated that during all of the years in question except one, Ms. D'Ordine worked on an almost daily, part-

Pursuant to § 16–39–3 the board's review of the commissioner's decision was limited to a determination of whether the decision was "patently 'arbitrary, discriminatory, or unfair.'" *Altman v. School Committee of Scituate*, 115 R.I. 399, 404–05, 347 A.2d 37, 40 (1975). Although the board acknowledged that a contrary interpretation of the phrase "regularly employed" is plausible, it found the commissioner's application of the term's plain and ordinary meaning as used in § 16–7–29 to be well reasoned and deserving of affirmation.

■ Our review of a petition for certiorari is limited to an examination of the record only for alleged errors of law. *Bochner v. Providence School Committee*, 490 A.2d 37, 40 (R.I.1985) (citing *School Committee of Providence v. Board of Regents for Education*, 429 A.2d 1297, 1302 (R.I.1981)). "It is not our function to review the lower tribunal's findings of fact when there is competent evidence to support these findings." *School Committee of Providence*, 429 A.2d at 1302 (citing *Henry v. Thomas*, 100 R.I. 564, 568, 217 A.2d 668, 671 (1966)). In the instant case we are satisfied that the commissioner's findings of fact are supported by sound and competent evidence and that the board properly adhered to the required standard of review in affirming the commissioner's decision.

However, we are aware that "[i]t is the function and duty of this court to construe statutes." *Howard Union of Teachers v. State*, 478 A.2d 563, 565 (R.I.1984) (citing *Bassett v. DeRentis*, 446 A.2d 763, 764 (R.I.1982)). Given that petitioner raises an issue of first impression before this court, we are confronted with an appropriate opportunity to examine the phrase "regularly employed" as it is used throughout chapter 16 and particularly as it relates to petitioner's assertion.

■ "[I]n construing a statute, our task is to establish and effectuate the intent of the Legislature," which is not all that clear in this instance. *Rhode Island*

*State Labor Relations Board v. Valley Falls Fire District*, 505 A.2d 1170, 1171 (R.I.1986) (citing *Howard Union of Teachers v. State*, 478 A.2d 563 (R.I.1984)). This is accomplished from an examination of "the language, nature and object of the statute." *Lake v. State*, 507 A.2d 1349, 1351 (R.I.1986) (citing *Howard Union of Teachers v. State*, 478 A.2d 563 (R.I.1984) and *Berthiaume*, 121 R.I. at 247, 397 A.2d at 892). Absent a contrary intent the words in the statute must be given their plain and ordinary meaning. *Lake*, 507 A.2d at 1351–52; *Brier Manufacturing Co. v. Norberg*, 119 R.I. 317, 322, 377 A.2d 345, 348 (1977). Furthermore in construing the statute, we must adopt a construction that does not effect an absurd result. *Rhode Island State Labor Relations Board*, 505 A.2d at 1171 (citing *Berthiaume v. School Committee of Woonsocket*, 121 R.I. 243, 397 A.2d 889 (1979)).

■ The petitioner's assertion that respondent was merely a per diem substitute teacher during the 1979 to 1983 school years would seem to be faulty from its inception. The petitioner mistakenly equates the phrase "regularly employed" with full-time employment. Nothing in the general laws mandates that an employee must work full-time to be considered regularly employed.

We have recognized that a "long term substitute [teacher] is 'a teacher who takes over a class when the regular teacher is absent for any number of reasons.'" *Bochner*, 490 A.2d at 41 (quoting *Corrigan v. Donilon*, 433 A.2d 198, 201 (R.I.1981)). The respondent was a part-time employee working on a scheduled basis over an extended period. Furthermore, a per diem substitute teacher is one who stands in the place of another and is paid on a day-to-day basis. Black's Law Dictionary 1136, 1429 (6th ed. 1990). The respondent did not stand in the place of another from time to time; she had her own curriculum and a formal schedule, which was strictly adhered to throughout the entire school year.

time basis. While Ms. D'Ambra's total number of hours and days worked may have been less than that of Ms. D'Ordine, her employment was no less regular in character."

As noted in § 16–16–1(2) and as we have recognized in *Berthiaume,* 121 R.I. at 248, 397 A.2d at 893, a substitute teacher is considered to be regularly employed when he or she works three-quarters of the number of days during a school year, or in effect, more than 135 days per year. However, since we are of the opinion that respondent was not, in fact, a per diem or substitute teacher, § 16–16–1(2) does not provide any guidance in construing when one is regularly employed.

Nevertheless, we believe that persons working fewer than forty-hours per week may still be considered regularly employed. Indeed, the actual time working may be less, but the nature of the employment need not be any less regular. Applying a plain and ordinary meaning to the phrase "regularly employed," in the absence of any contrary legislative intent, we are of the opinion that the conditions of respondent's employment fully satisfied the statutory requirements of chapter 16 with respect to regular employment.

### III

■ Lastly petitioner contends that the commissioner erred by placing respondent on the fourth step of the salary scale and allowing credit for respondent's service during the 1979 to 1983 school years. The resolution of this issue is directly dependent on a finding that respondent was regularly employed during that period.

Section 16–7–29 provides for a minimum salary schedule for regularly employed teachers and reads in pertinent part:

"Every community shall establish and put into full effect by appropriate action of its school committee a salary schedule recognizing *years of service, experience, and training* * * * for all certified personnel *regularly employed* in the public schools." (Emphasis added.)

Clearly a proper finding that respondent was regularly employed during the 1979 to 1983 school years results in respondent's falling within the purview of § 16–7–29.

In concluding that respondent was entitled to credit for purposes of placement on the salary schedule, the commissioner found respondent's employment during the 1979 to 1983 school years to be service as construed in *Howard* and as defined in §§ 16–7–16 and 16–16–1. In giving the phrase "years of service" its ordinary and everyday meaning, the commissioner construed it to encompass the academic school year. Furthermore, the commissioner noted that § 16–7–29 does not mandate that creditable years of service be limited to years of full-time employment, making respondent's part-time status applicable.

We have previously interpreted the terms "service," "experience," and "training" as defined by § 16–16–1 to include only in-state public service, experience, and training. *Howard Union of Teachers,* 478 A.2d at 566. The evidence does not lend itself to the proposition that respondent provided anything other than in-state service during the 1979 to 1983 school years. Indeed her employment throughout that period was limited to the town's school system.

As noted, our review with respect to petitions for certiorari looks at whether the decision was supported by sound and competent evidence and without errors of law. *Bochner,* 490 A.2d at 40; *School Committee of Providence,* 429 A.2d at 1302. Furthermore, our review of the board's affirmation is whether it was limited to a determination that the commissioner's decision was not "patently 'arbitrary, discriminatory, or unfair.'" *Altman,* 115 R.I. at 404–05, 347 A.2d at 40. Here too we believe the commissioner's decision was supported by competent evidence and the board's affirmation adhered to the foregoing standard of review.

For the foregoing reasons, the petition for writ of certiorari is denied. The writ heretofore issued is quashed, and the decisions of both the commissioner and the board are affirmed. The papers in the case may be remanded to the board with our decision endorsed thereon.