DECISION
Before this Court is an appeal from the Personnel Appeals Board (Board), which upheld a decision of the Rhode Island Labor Relations Board (State). Jurisdiction in this Superior Court is pursuant to G.L. 1956 (1993 Reenactment) § 42-35-15 of the Administrative Procedures Act.
I. Facts/Travel
A review of the record, including a transcript from the Board's October 17, 1993 hearing, indicates that Armando D'Iorio (appellant) was employed as Chief of Legal Services in the Department of Labor. With approximately thirty (30) years of service, appellant qualified as a tenured employee pursuant to G.L. 1956 (1992 Reenactment) §§ 36-4-59 and 36-5-8.
In early 1991, the State of Rhode Island faced a severe financial crisis. The State government asked all State offices to review their operations and expenses as substantial cuts would have to be made in state funding. Tr. at 8. William Tammelleo (Tammelleo), the Director of Labor, was told that he would have to cut his budget by ten percent (10%). Tr. at 3. The administration directed him to begin by cutting personnel in his department. Tr. at 3. In deciding which individuals to lay off, Tammelleo stated that the length and quality of appellant's services were taken into account. Tr. at 9. On February 27, 1991, the State informed appellant that due to "a severe shortage of funds," he would be laid off effective March 1991. Tammelleo maintained that if the Department were to receive additional funding from the State, appellant would be reinstated to his position. Tr. at 12.
On March 1, 1991, appellant filed an appeal of the February 27th lay off with the Board. Appellant asserted that he had acquired tenure status pursuant to R.I.G.L. §§ 36-4-59 and36-5-8 and was therefore immune from the provisions of R.I.G.L. § 36-4-7. Before ruling on appellant's appeal, the Board asked the appellant, as well as all other interested parties, to submit briefs regarding the effect, if any, of §§ 36-4-59,36-5-7, and 36-5-8 on the State's ability to lay off employees pursuant to § 36-4-7. On September 10, 1991 the Board issued a preliminary decision concluding that employees who acquire statutory tenure status pursuant to §§ 36-4-59, 36-5-7 and36-5-8 are protected in cases of termination resulting from job abolishment or reorganization and therefore entitled to be retained within the State's services in a position of similar grade. The Board stated, however, that this status did not prevent an employer from laying off a statutorily protected employee due to a shortage of funds pursuant to § 36-4-7.
The Board then scheduled appellant's case for an October 17, 1991 hearing in order to determine whether the appellant had, in fact, qualified as a tenured employee and whether the State's action constituted a job abolishment or a lay off resulting from the budgetary shortfall. At the hearing, Tammelleo testified for the State. Tammelleo discussed the financial burdens placed upon his department in the wake of the State's financial crisis and his decision to reduce personnel. Tammelleo testified that he reviewed the personnel roster and the circumstances in each of the major departments and the major units of the Department of Labor. Tr. at 6. Tammelleo concluded that a number of individuals, including appellant, would have to be laid off. Tr. at 6. Tammelleo also introduced the Department's organizational chart which listed appellant's position as open but vacant due to lack of funds. Tr. at 7.
On November 8, 1991, the Board issued its decision. The Board determined that the appellant had attained statutory tenure status. The Board also stated, however, that the Authority's action was a lay off resulting from shortage of funds and not an abolishment of his position. The Board concluded that the Authority's actions were not in violation of appellant's statutory rights and therefore unanimously upheld the Authority's decision. The instant appeal timely followed.
Appellant argues that the Board's decision must be vacated and/or remanded due to: (1) an improper application of the lay-off provision which resulted in the State violating statutory and constitutional provisions; (2) an erroneous finding by the Board that the State's actions constituted a lay off of the appellant and not an abolition of his position, entitling him to be placed in a comparable position elsewhere in state government; and, (3) improper application of the 1990 amended version of § 36-5-8 which resulted in a divestiture of previously acquired rights.
II. Standard of Review
The review of a decision of the Board by this Court is controlled by R.I.G.L. § 42-35-15 (g), which provides for the review of a contested agency decision:
 "(g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
This section precludes a reviewing court from substituting its judgment for that of the agency in regard to the credibility of witnesses or the weight of evidence concerning questions of fact. Costa v. Registry of Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1988); Carmody v. R.I. Conflict of Interest Commission,509 A.2d 453, 458 (R.I. 1986). Therefore, this Court's review is limited to determining whether substantial evidence exists to support the agency's decision. Newport Shipyard v. Rhode IslandCommission for Human Rights, 484 A.2d 893 (R.I. 1984). "Substantial evidence" is that which a reasonable mind might accept to support a conclusion. Id. at 897, quoting Caswell v.George Sherman Sand Gravel Co., 120 R.I. 1981,424 A.2d 646, 647 (1981). This is true even in cases where the court, after reviewing the certified record and evidence, might be inclined to view the evidence differently from the agency.Berberian v. Dept. of Employment Security, 414 A.2d 480, 482 (R.I. 1980). This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardo v. CoastalResources Management Council, 434 A.2d 266, 272 (R.I. 1981). However, questions of law are not binding upon a reviewing court and may be freely reviewed to determine what the law is and its applicability to the facts. Carmody, 509 A.2d at 458. On review, the Supreme Court examines the record to determine "whether comparable evidence" supports the Superior Court judge's decision. R.J.E.P. Associates v. Hellwell, 560 A.2d 353, 354 (R.I. 1989).
III. Statutory Interpretation of the Lay-off Provision
Appellant first argues that the Board erred in its September 10, 1991 decision when it ruled that employees who attain statutory tenure status pursuant to R.I.G.L. §§ 36-4-59,36-5-7, and/or 36-5-8 are nevertheless subject to the lay-off provision of § 36-4-37. R.I.G.L. §§ 36-4-59 and 36-5-8
both provide that employees in either classified, unclassified or nonclassified positions are deemed to have achieved "full status" upon meeting specified criteria. Section 36-4-59, "Tenure of Incumbents in State Service," confers full status on employees who have completed twenty (20) years, "not necessarily consecutive, of service credit." Section 36-5-8, "State employment tenure for disabled veterans," confers full status on employees who are "honorably discharged veteran[s] of the armed forces of the United States of America and who [are] also receiving a disability pension from the United States government for a service connected disability and [have] completed ten (10) years or more not necessarily consecutive, of service credit." Both of these statutes then contain identical language, which provide, in pertinent part, that the employees:
 "shall be deemed to have acquired full status in the subsequent position and shall be protected by the provisions of this chapter, provided, however:
 * * *
 (2) That in the case of the abolition of a position through reorganization or otherwise, the incumbent in such position, otherwise qualified under this section, shall be retained within the state services in a position of similar grade;
 * * *
 (4) That all employees otherwise qualified under this section shall be subject to all the provisions of dismissal and appeal as elsewhere described in the chapter."
Section 36-4-37, "Layoffs-Preference for retention or reemployment", provides that:
 "An appointing authority may lay-off a classified employee whenever he or she deems it necessary because of a material change in duties or organization, or shortage or stoppage of work funds. In every case of layoff, the appointing authority shall, before the effective date thereof, give written notice of his or her action to the personnel administrator and the employee and shall certify that consideration has been given to the length and quality of service of all employees in the affected class under his/her jurisdiction. No employee with full status shall be laid off while probational, provisional, or temporary employees are employed by the same appointing authority in the same class of positions; no probationary employee shall be laid off while provisional or temporary employees are employed by the same appointing authority in the same class of positions; nor shall any temporary appointment be made to any position in the class by the appointing authority while any employee who has been laid off by the appointing authority is available for certification from the reemployment list. Any person who has held full status and who has been laid off shall have his or her name placed on the appropriate reemployment list."
In reaching its decision, the Board acknowledged that statutory tenured employees are entitled to heightened protection under the relevant provisions of the statutes and therefore enjoy greater job security than do other non-tenured employees. In cases where such an employee's position has been eliminated subsequent to reorganization or abolishment, the Board noted that the employee is statutorily entitled to be retained within the State's services in a position of similar grade. The Board did not find, however, that this protection extended to situations in which the employee was laid off pursuant to § 36-4-7. Rather, the Board concluded that under a plain reading of the statutes, the State and its agents do have the authority to lay off a statutory tenured employee due to a shortage of funds. Furthermore, the Board found nothing in the statute to support the conclusion that a lay off for shortage of funds is the legal equivalent of a job abolition. The Board stated that the language of the statute clearly permits the state to lay off full status employees for reasons other than reorganization or abolishment of positions. The Board cited R.I.G.L. § 36-4-7, which states in pertinent part: "Any person who has held full status in the classified service and has been laid off for reasons other than
reorganization or abolishment shall have his or her name placed on an appropriate reemployment list as of the date of his/her termination." (Emphasis added).
In support of his position, appellant advances several arguments. First, appellant argues that the State's application of the lay-off statute was improper and that the tenure provision exclusively governs this dispute. Appellant contends that in applying the lay-off provision to tenured employees, the State is effectively treating a non-probationary state employee with as little as six (6) months experience the same as an employee who has achieved tenure status pursuant to the statute(s), thereby violating the spirit of the merit system statutes and thwarting their purpose. Appellant argues that the Legislature was clear in enumerating which provisions of the merit system apply to employees with statutory tenure status: appeals and dismissal, "conspicuously" leaving out lay offs. Appellant interprets this to mean that all other sections, including the lay-off provision, are excluded.
"In construing a statute, our task is to effectuate the intent of the legislature." D'Ambra v. North Providence SchoolCommittee, 601 A.2d 1370, 1374 (R.I. 1992) (quoting R.I. StateLabor Relations Board v. Valley Falls Fire District,505 A.2d 1170, 1171 (R.I. 1986)). This is accomplished from an examination of the "language, nature, and object of the statute." D'Ambra, 601 A.2d at 1374 (quoting Lake v. State, 507 A.2d 1349, 1351 (R.I. 1986)). Absent a contrary intent, the words in the statute must be given their plain and ordinary meaning. Id. Furthermore, in construing the statute, the court must adopt a construction that does not affect an absurd result. D'Ambra, 601 A.2d at 1374 (quoting R.I. State Labor Relations Board, 505 A.2d at 1171). When a court is called upon to construe the provisions of coexisting statutes, the court must follow the rule of statutory construction that statutes relating to the same or similar subject matter should be construed such that they will harmonize with each other and be consistent with their general scope.Blanchette v. Stone, 591 A.2d 785, 786 (R.I. 1991). Viewing the statutes in this context, while keeping in mind the constraints imposed by the limited scope of review, this Court does not find, as a matter of law, that the Board's interpretation of the statute was erroneous.
A careful reading of the statutes, including respective legislative histories, indicates that the tenure statutes afford a heightened degree of job protection to qualified employees. In the case of abolishment or reorganization, the statute provides that a comparable position elsewhere within State government be found. Furthermore, an employee who qualifies under either of these statutes is not required to take and pass a civil service exam for the position that he/she holds. The statutes do not preclude, however, any action, barring dismissal for cause, with regard to tenured employees. The tenure statutes, as they existed at the time of the State's action, are completely devoid of any language which expressly provides for protection of tenured employees in the case of lay offs. Had the Legislature wanted to afford such protection, it would have included the appropriate language in the statute. It did not; therefore, no such protection exists. See Murphy v. Murphy, 471 A.2d 619, 622 (R.I. 1984); Kirby v. Planning Board of Review, 634 A.2d 285, 290 (R.I. 1993).
Furthermore, "full status" employees, as defined by the tenure statutes, are not the equivalent of a non-probationary employee with as little as six (6) months experience. Section36-4-37 establishes a hierarchal system to be used in implementing any lay offs pursuant to the statute. This system expressly provides that "full status" employees are to be discharged only after all temporary, provisional and probationary employees are discharged. Furthermore, it mandates that consideration be given to the length and quality of service of all employees. Pursuant to the statute, a tenured employee will necessarily receive heightened protection under the lay-off provision simply by virtue of the number of years he/she has served.
Appellant also argues that the 1992 amended versions of the various tenure statutes should apply to the current action. Appellant contends that the amendments, which give statutorily tenured employees the same protection in the case of a lay off as that afforded in the case of abolishment, i.e. bumping rights, succeeded the state wide layoffs in 1991 and should thereby be construed as an attempt by the Legislature to clarify the law rather than change it. In appellant's view, this provides further evidence of the Legislature's intention to exclude statutorily tenured employees from the provisions of § 36-4-7.
It is well established "that statutes and their amendments are presumed to apply prospectively." Hydro-manufacturing, Inc.v. Kayser-Roth Corp., 640 A.2d 950, 954 (R.I. 1994); Lawrence v.Anheuser-Busch, Inc., 523 A.2d 864, 869 (R.I. 1987). Only when it appears by clear, strong language or by necessary implication that the Legislature intended a statute to have retroactive application will the courts apply it retrospectively.Hydro-Manufacturing, 640 A.2d at 955; VanMarter v. RoyalIndemnity Co., 556 A.2d 41, 44 (R.I. 1989). In this case, there is neither language nor intent to support appellant's contention that the statute should be applied retroactively. In fact, the Legislature expressly provided that the statute was to "take effect on passage." P.L. 1992, ch. 366, sec. 1. SeeHydro-Manufacturing at 955. In the absence of any evidence to the contrary, the statute must be applied prospectively.
Finally, appellant argues that the State could only remove him for cause as he had full status under an earlier version of § 36-5-8 which was in existence prior to the 1990 repeal and amendment of the statute. Appellant asserts that because the earlier version of the statute, under which he had acquired full status, provided that disabled veterans could only be removed for cause, he had attained a "right" to his employment. An application of the amended statute, in appellant's view, would serve to work as a divestiture of this right. Appellant argues that the amended statute should apply prospectively.
In support of his argument, appellant cites R.I.G.L. §43-3-22, "Effect of repeal on prior rights and proceedings," which states: "The repeal of any statute shall in no case affect any act done, or any right accrued, acquired, or established, or any suit or proceeding had or commenced in any civil case before the time when the repeal shall take effect." Appellant argues that this "saving statute" expressly disallows the application of the amended version of § 36-5-8. Appellant also cites Webb v.Cianci, 591 A.2d 1193 (R.I. 1991) for the principle that the State cannot retroactively apply an amended statute unless it is clear that was the intent of the Legislature. Appellant's argument, however, is misplaced.
"The Legislature has a right to alter or amend any [statute] previously adopted." Craig v. Pare, 497 A.2d 316, 319 (R.I. 1985), (quoting Gosz v. Quattrocchi, 448 A.2d 135, 138 (1982)). An amendment will be controlling unless forbidden by the State or Federal Constitution. Craig, 497 A.2d at 39. "Since a Legislature, whose acts are done within the scope of its powers, are presumed to be valid, amendments to existing laws should be given full force and effect by the courts from the time of their passage." Id. Because the amended version of § 36-5-8 was in effect at the time of the hearing, it was properly applied by the Board when deciding appellant's case.
Appellant further argues that this application serves to divest a right previously acquired; namely, a "right" to employment with the State government such that he could only be dismissed for cause. In Brennan v. Kirby, 529 A.2d 633 (R.I. 1987), the R.I. Supreme Court stated that "the Supreme Court has steadfastly adhered to the principle that absent a clear indication by the legislature that it intended to bind itself contractually by passing an enactment, the presumption pervades that [the] law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature should ordain otherwise." Brennan, 529 A.2d at 638 (quoting Dodge v. Board of Education of Chicago, 302 U.S. 74, 79 (1937)). Furthermore, the Court noted that it is the burden of the party asserting the creation of vested rights to prove otherwise. Id. Absent a clear expression of the Legislature's intent, the court will not construe the statute as creating rights which bind the State as a party. Id.
In the present case, appellant has not met his burden of proving that the Legislature intended to bind itself or create contractual rights in the appellant. The previous version of § 36-5-8 merely established a policy, to wit, tenured disabled veterans could only be removed for cause. The Legislature acted within its authority when it decided to alter this provision and change the circumstances under which the employee could be discharged. Therefore, as the appellant has failed to demonstrate that the Board's interpretation of the statutes is clearly erroneous, this Court will defer to the Board's interpretation of the statutes.
IV. Abolition of Appellant's Position
Appellant further asserts that there is insufficient evidence to support the Board's decision that the State's actions constituted a lay off rather than an abolition of the position. In its decision, the Board stated that the appellant was laid off because of the State's financial crisis and that the action was temporary in nature. If more funds become available, appellant would be rehired. The Board noted that at the time of the appeal, the position remained "open" on the State's organizational chart. Appellant asserts, however, that the Board's actions unequivocally amount to an abolition as the appellant's position was effectively eliminated, rather than vacated for a temporary period of time due to a shortage of funds.
When reviewing the findings of fact of an administrative agency, the court is limited by a stringent standard of review. The court will reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record. Milardo v. Coastal ResourcesManagement Council, 434 A.2d 266, 272 (R.I. 1981). "If competent evidence exists on the record considered as a whole, the court is required to uphold the agency's conclusions." EnvironmentalScientific Corp. v. Durfee, 621 A.2d 200, 208 (R.I. 1993). The court is mindful, however, that the deference due to an agency interpretation of its governing statutes and regulations is far from blind allegiance. See Citizens Savings Bank v. Bell,655 F. Supp. 1033, 1042 (1985). If there is no substantial evidence to support the agency's decision, the court may reverse or remand the decision with further instructions.
A lay off is defined as a cessation of employment and is usually temporary in nature. The New Webster EncyclopedicDictionary (1984). On the other hand, to "abolish" something means to do away with wholly or destroy completely. Id. Consequently, abolishment connotes something more permanent in nature. Relevant case law further supports this distinction. SeeCasey v. Sundlun, 625 A.2d 481, 482 (R.I. 1992) (subsection (2) of § 36-5-7 protects state employees where an entire job is eliminated); Howie v. Stackhouse, 392 N.E.2d 1081 (Ohio 1977) (job abolishment contemplates permanent elimination of a particular position; lay off contemplates retention of position temporarily vacated by shortage of work or funds).
After careful review, this Court concludes that the Board's finding that the appellant was laid off is supported by reliable, substantial evidence. The Board found that appellant had been laid off exclusively because of the State's financial condition and that consideration had been given to the length of appellant's service. Furthermore, the Board found that appellant's position remains open but had not been filled and that he would be rehired if the funds were available to pay him. Accordingly, the Board concluded that the appellant had been laid off from his position. As this finding of fact is not clearly erroneous in light of the reliable, probative and substantial evidence, this Court will not reweigh the evidence or substitute its judgment for that of the Board on this question of fact.Newport Shipyard, 484 A.2d at 898.
For the reasons herein stated above, the decision of the Board is affirmed and the appellant's appeal is denied.
Counsel should submit the appropriate judgment for entry.