DECISION
This is an appeal from a decision of the Zoning Board of Review for the Town of Tiverton (Board). The plaintiff is seeking a reversal of the Board's decision dated April 20, 1995. In its decision, the Board denied the plaintiff's appeal from a decision of the Town of Tiverton Building Inspector (Building Inspector) denying the plaintiff a zoning permit. Jurisdiction in this Court is pursuant to G.L. 1956 § 45-24-69.
Facts/Travel
Victor R. Ferland (plaintiff) owns the subject property described as Lot 79 of Assessor's Plat 99, located at 548 Stafford Road, Tiverton, Rhode Island. The property is presently zoned R-30, a residential district requiring a minimum lot area of thirty thousand (30,000) square feet. Town of Tiverton Zoning Ordinance, Article V § 1. Lot 79 consists of approximately thirteen thousand six hundred and sixty eight (13,668) square feet. The plaintiff purchased the lot in 1976. (Tr. at 15). In 1964, the Town of Tiverton adopted the Tiverton Zoning Ordinance (Ordinance) causing Lot 79 to be designated as R-30, and rendered the lot a substandard lot of record.[1] (Tr. at 31). The structure on the nonconforming parcel was constructed in 1850 and sits in close proximity to the front property line in violation of the set back requirements of the Ordinance.[2] (Tr. at 31, 48). Therefore, the structure is a legal nonconforming development.[3]
The nonconforming structure was damaged by fire on March 11, 1993. (Tr. at 17). In 1994, the plaintiff was ordered by the Building Inspector to tear down and remove the damaged structure because no action had been taken by the plaintiff to re-build within a one year period. See Office of the Building Inspector letter dated December 12, 1994. On February 7, 1995, the plaintiff applied to the Building Inspector for a building permit in order to reconstruct the damaged structure. See Application for Building Permit dated 2/7/95. On February 8, 1995, the Building Inspector denied the application citing a violation of Article XIV, § 4 (b) of the Ordinance and because no drawings were submitted with the application. See Application for Building Permit dated 2/7/95. On March 9, 1995, the plaintiff appealed the decision of the Building Inspector to the Board stating, as the basis of his appeal, that the Building Inspector wrongly applied Article XIV of the Ordinance. See Application of Appeal to the Town of Tiverton Zoning Board of Review dated 3/9/95.
At a properly advertised hearing held on April 5, 1995, two witnesses testified in support of the application. The plaintiff testified that at the time of the fire, the property was uninsured and that he lacked the funds to rebuild the damaged structure in 1993 and 1994. (Tr. at 11-12, 14). In addition, the plaintiff stated that he was unable to rebuild the structure due to an illness. (Tr. at 16). The plaintiff further testified that it was always his intent to rebuild the damaged structure. (Tr. at 13).
The Board then heard testimony from Warren Ferland, the plaintiff's nephew and the contractor hired to perform the proposed repairs. (Tr. at 32). Mr. Ferland testified that he had not estimated the cost of the total project (Tr. at 38), but that he had given the plaintiff a ballpark figure of $20,000 to $25,000 to do the work. (Tr. at 39). However, he explained that the figure did not include the cost of hiring a plumber and depended upon the willingness of the plaintiff's family to assist with the construction. (Tr. at 39-40). Additionally, it was his opinion that only forty nine percent (49%) of the existing structure was destroyed by the fire. (Tr. 50-51).
Wilfred B. Eccles, the Building Inspector, was the next and last witness to testify before the Board. He stated that in 1994 he informed the plaintiff and his nephew that the damaged structure had to be rebuilt within one year of the fire or would have to be demolished. (Tr. 41-42, 56). Mr. Eccles explained that he denied the petition because in his opinion, based upon his on-site view, the damage to the nonconforming structure exceeded fifty one percent (51%) of its replacement cost at the time of the fire and because the plaintiff failed to commence rebuilding within the one year period set out in § 4 (b). (Tr. at 51-52). He further testified that his denial of the application was due in part to the plaintiff's failure to submit the required drawings. (Tr. at 47). Mr. Eccles also testified that the plaintiff informed him of his intent to rebuild the damaged structure. (Tr. at 56).
Following the hearing, the Board voted four to one to deny the appeal. (Tr. at 83). The plaintiff filed a timely appeal to this Court.
Standard of Review
Superior Court review of a zoning board decision is controlled by G.L. 1956 § 45-24-69 (D), which provides:
 "45-24-69. Appeals to Superior Court
 (D) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing a decision of a zoning board, a justice of the Superior Court may not substitute his or her judgment for that of the zoning board if he or she conscientiously finds that the Board's decision was supported by substantial evidence. Apostolouv. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more than a scintilla but less than a preponderance." Caswell v. George Sherman Sandand Gravel Co. Inc., 424 A.2d 646, 647 (R.I. 1981) (citingApostolou, 120 R.I. at 507, 388 A.2d at 824-25). The reviewing court "examines the record below to determine whether competent evidence exists to support the tribunal's findings." New EnglandNaturist Ass'n, Inc. v. George, 648 A.2d 370, 371 (R.I. 1994) (citing Town of Narragansett v. International Association of FireFighters, AFL-CIO, Local 1589, 119 R.I. 506, 380 A.2d 521
(1977)).
Article XIV § 4(b) of the Ordinance
Article XIV, § 4 (b) of the Ordinance provides that "[s]hould a legal nonconforming structure, or nonconforming portion of a structure, be damaged by an accident or act of God to an extent of more than fifty-one percent (51%) of its replacement cost at the time of damage as determined by the zoning officer, it shall be given one (1) year in which to commence rebuilding, repairing or replacing the damaged structure." Section 4 (b) further provides that "[i]f such action is not taken within said one (1) year period, then it shall not be rebuilt, repaired or replaced except in conformity with the provisions of this ordinance." The Board relied upon this provision in denying the plaintiff's petition. In doing so, the Board accepted the opinion of the Building Inspector that the property suffered damage in excess of 51% of its replacement cost. The Board rejected the opinion of the plaintiff's nephew, Warren Ferland, on this issue. The court lacks the authority to consider the credibility of these witnesses and, therefore, on this factual issue, the court must sustain the determination reached by the Board. Kirby v. Planning Bd. of Review,634 A.2d 285 (R.I. 1993). Nonetheless, this factual determination is not dispositive on the instant appeal because the court finds that the aforementioned provision of the ordinance is invalid and void.
The plaintiff argued before the Board and presently maintains, that § 4 (b) of the Ordinance is illegal because it imposes an absolute time limit within which the property owner must make repairs to a nonconforming development after it has been damaged by fire. At the hearing, the Board correctly noted that it lacked the authority to consider the validity of the Ordinance. M.B.T. Construction Corp. v. Edwards, 528 A.2d 336
(R.I. 1987)(Zoning Board of Review does not have authority to consider the validity and enforceability of a section of the zoning ordinance). Accordingly, questions with respect to the validity of a zoning ordinance lie in the first instance with the courts.
The instant matter involves a development which is nonconforming by dimension and not by use.[4] The section of the enabling act pertinent to the continuation of a nonconforming development is General Laws § 45-24-39, which provides in its entirety:
 "(A) Any city or town adopting or amending a zoning ordinance under this chapter shall make provision therein for any use, activity, building, or sign or other improvement, lawfully existing at the time of the adoption or amendment of the zoning ordinance, but which is nonconforming by use or nonconforming by dimension (emphasis added). The zoning ordinance may regulate development which is nonconforming by dimension differently than that which is nonconforming by use. (B) The zoning ordinance shall permit the continuation of nonconforming development (emphasis added). However, this shall not prohibit the regulation of nuisances. (C) A zoning ordinance may provide that, if a nonconforming use is abandoned, it may not be reestablished. Abandonment of a nonconforming use shall consist of some overt act, or failure to act, which would lead one to believe that the owner of the nonconforming use neither claims nor retains any interest in continuing the nonconforming use unless the owner can demonstrate an intent not to abandon the use. An involuntary interruption of nonconforming use, such as by fire and natural catastrophe, does not establish the intent to abandon the nonconforming use. However, if any nonconforming use is halted for a period of one year, the owner of the nonconforming use will be presumed to have abandoned the nonconforming use, unless that presumption is rebutted by the presentation of sufficient evidence of intent not to abandon the use."
In construing a statute, the court is to establish and effectuate the intent of the Legislature. Rhode Island StateLabor Relations Board v. Valley Falls Fire District,505 A.2d 1170, 1171 (R.I. 1986)(citing Howard Union of Teachers v. State,578 A.2d 563 (R.I. 1984)). Legislative intent is determined from an examination of the "language, nature and object of the statute." D'Ambra v. North Providence School Committee,601 A.2d 1370, 1374 (R.I. 1992). Where the statutory language is clear and unambiguous, the enactment must be applied literally and is not subject to judicial construction. Link v. State, 633 A.2d 134, 1348 (R.I. 1993). "In such circumstances, the words must be given their plain and ordinary meaning." Id.
The clear and unambiguous language of § 45-24-39 (A) reveals a legislative intent to include within the term nonconforming development, developments that are nonconforming by dimension, as well as by use. Pursuant to subsection (B), zoning ordinances shall permit the continuation of nonconforming developments. Subsection (C) modifies subsection (B) only as it relates to development which are nonconforming by use. There is no similar subsection modifying subsection (B) as it pertains to developments which are nonconforming by dimension. However, § 4 (b) of the Tiverton Ordinance imposes an absolute time limit within which a property owner must reconstruct a nonconforming structure after a fire. The property owner's inaction prohibits the continuation of a development nonconforming as to dimension and would require the property owner to obtain dimensional relief before commencing reconstruction of the nonconforming structure. Towns and cities cannot enact ordinances which exceed the authority granted by the enabling legislation as doing so constitutes an attempt to abridge by ordinance a right given in the act. M.B.T. Construction Corp. at 339. Accordingly, Article XIV, § 4 (b) of the Ordinance exceeds the authority granted by the enabling legislation as it restricts a property owner's rights under the act.[5] Therefore, the Board acted, "in excess of the authority granted to the zoning board by statute or ordinance," R.I.G.L. § 45-24-69 (D)(2), and substantial rights of the plaintiff have been prejudiced.
In order to demonstrate abandonment in this case, the objecting party had the burden of proving two factors: "one, intent to abandon and two, some overt act, or failure to act, which would lead one to believe that the owner neither claims nor retains any interest in the subject matter of the abandonment."Washington Arcade v. Zoning Bd. of Review, 528 A.2d 736, 738 (R.I. 1987). However, the only evidence presented on the issue of abandonment was evidence of a period of nonuse of the structure due to an involuntary interruption, a fire. It is well-settled at common law, that nonuse in and of itself is insufficient to establish abandonment and that an involuntary interruption of a nonconforming use such as a fire, does not establish the requisite intent to abandon because the cessation of the use is not a voluntary act of the user. Id. at 738. Accordingly, it is clear that the Board applied the incorrect legal standard in determining that the plaintiff had abandoned the nonconforming development. Therefore, the Board's decision was clearly erroneous in view of the reliable, probative and substantial evidence on the whole record, and substantial rights of the plaintiff have been prejudiced.
The April 20, 1995 decision of the Tiverton Zoning Board of Review is hereby reversed.
Counsel shall submit the appropriate judgment for entry.
[1] Article VII, § 1 of the Ordinance, entitled "substandard lots of record," provides:
"[a]ny lot or parcel of land with frontage on a street but having a lot width or area of lesser amounts than required in Article V may be used for any purpose permitted in the zoning district in which it is located, provided such lot or parcel of land was shown on a recorded plat recorded deed in the office of the Town Clerk on the effective date of this ordinance, or any prior ordinance or amendment rendering it substandard."
[2] Pursuant to the Dimensional Regulations Table in Article V of the Ordinance, parcels located in an R-30 district must have a minimum front yard depth of forty (40) feet for a single family dwelling.
[3] Pursuant to Article XIV, § 1 of the Ordinance "[a]ny use of land, premises, structure or combination thereof, which was lawfully in operation at the time of the effective date of this ordinance, but is not in conformity with the provisions of this ordinance, shall be considered to be a legal nonconforming development."
[4] General Laws § 45-24-31 (49) provides in pertinent part:
"(a) Nonconforming by use: a lawfully established use of land, building, or structure which is not a permitted use in that zoning district. A building or structure containing more dwelling units than are permitted by the use regulations of a zoning ordinance shall be nonconformity by use; or
(b) Nonconforming by dimension: a building, structure or parcel of land not in compliance with the dimensional regulations of the zoning ordinance. Dimensional regulations include all regulations of the zoning ordinance, other than those pertaining to the permitted uses. A building or structure containing more dwelling units than are permitted by the use regulations of a zoning ordinance shall be nonconforming by use; a building or structure containing a permitted number of dwelling units by the use regulations of the zoning ordinance, but not meeting the lot area per dwelling unit regulations, shall be nonconforming by dimension."
[5] Prior to the enactment of § 45-24-39, § 45-24-10 of the enabling act addressed the continuance of developments that were nonconforming by use. General Laws § 45-24-10, which was repealed effective July 1, 1993, provided that no ordinance was to prevent the continuance of nonconforming uses which were lawfully in existence at the time of its enactment. Relying upon § 45-24-10, our Supreme Court in M.B.T. Construction Corp., supra, struck down a provision similar to § 4 (b) of the Tiverton Ordinance, which provided that any building constituting a nonconforming use that was destroyed by fire, lost its nonconforming use status unless reconstruction was commenced within a year of the fire and completed within twenty-four months. The Court held that by setting an absolute time limit within which a property owner had to rebuild a nonconforming structure, the Ordinance restricted the plaintiff's statutory rights under the act.